IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

NOVEMBER 1997 SESSION


| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 02C01-9611-CR-00435 |
| Appellee, | * | SHELBY COUNTY |
| VS. | * | Hon. Arthur T. Bennett, Judge |
| SAMUEL D. PERRY, | * | (Robbery) |
| Appellant. | * | |

FILED

January 29, 1998

Cecil Crowson, Jr.

Appellate Court Clerk

For Appellant:

Edward G. Thompson
Assistant Public Defender
212 Adams Avenue
Memphis, TN  38103
(on appeal)

Teresa Jones
Assistant Public Defender
201 Poplar Avenue, Second Floor
Memphis, TN  38103
(at trial)

Of Counsel:

A.C. Wharton, Jr.
Shelby County Public Defender

For Appellee:

John Knox Walkup
Attorney General and Reporter

Kenneth W. Rucker
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-4351

Charles Bell
Asst. District Attorney General
201 Poplar Avenue, Third Floor
Memphis, TN  38103

OPINION FILED:_____



AFFIRMED



GARY R. WADE, JUDGE

<u>OPINION</u>

The defendant, Samuel D. Perry, was convicted of simple robbery. The trial court imposed a three-year sentence to be served in the Shelby County Correctional Center. In this appeal of right, the defendant challenges the sufficiency of the evidence and complains that the trial court should have granted an alternative sentence.

We affirm the judgment of the trial court.

On the evening of July 16, 1993, the victim, Reese Walker, and his girlfriend attended a concert at the Mud Island Amphitheater in Memphis. Afterward, they ate at a Perkins Family Restaurant and drove towards their home. During that time, the victim and his girlfriend argued and the victim insisted on walking the rest of the way to his residence.

Afterward, at about 2:00 A.M. on July 17, the victim was walking south on Elvis Presley Boulevard when he saw a group of six or seven men standing at a bus stop near the Clementine Apartments. The victim paused and a male he later identified as the defendant approached him from behind and directed him to "move forward." When the victim reached the parking lot of an Oil City gas station, his assailant ordered him to drop his umbrella and to empty his pockets. At that point, the victim observed an object protruding from his assailant's side, which "may have been a crowbar." The victim then threw his wallet and keys to the ground. The assailant then asked, "Where's the money?" When the victim responded that he had none, he was told to leave.

The victim stopped at a convenience market and asked the clerk to

2

report the robbery. About ten minutes later, as the victim related to the clerk the details of the incident, his assailant, wearing the same clothes except that his t-shirt had been turned inside out, entered the store and walked to the cooler. The defendant made a purchase and left in his vehicle. The victim observed a second individual wearing glasses and with a low-cut haircut inside the defendant's car and then took the number on the license plate.

Patrolman James Howell of the Memphis Police Department responded to the call from the convenient market. When provided a description by the victim and acting upon other information supplied by the clerk, Patrolman Howell went to the scene of the robbery. He described the area as sufficiently lighted to allow an identification. He found the defendant's vehicle parked at the Clementine Apartments. At that point, a tall male wearing glasses observed the squad car and hurried back into his apartment unit. When Officer Howell knocked on the door, he found the unit occupied by a male and female and two other men who matched the victim's description of the individuals in the vehicle. The victim immediately identified the defendant as his assailant and the other individual as the passenger in the assailant's car.

At trial, the defense called Jonathan Clark as a witness. Clark testified that he had been the passenger in the car driven by the defendant to the convenient market. He claimed that he and the others in the apartment had been playing cards, that the defendant had not committed the robbery, and that the two men were already at the counter of the convenient market when the victim arrived.

The defendant testified that he had been playing cards at the apartment during the course of the evening except for that amount of time taken to

3

drive to the convenient market for beer. He categorically denied any participation in the robbery and claimed that he was inside the market at the time the victim arrived to report the incident. The defendant claimed that he did not know the full names of the other individuals who had played cards with him on the night of the robbery. He explained that many people in the apartments were known only by their first names and that the woman who rented the apartment had moved to an unknown location.

I

The defendant insists that he was misidentified. On appeal, however, the state is entitled to the strongest legitimate view of the evidence and any reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). In a criminal case, a conviction can be set aside only when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e).

Robbery is defined as the intentional or knowing theft of property from the person of another by violence or putting the person in fear. Tenn. Code Ann. § 39-13-401(a). Here, the proof offered by the state established each of the elements required for a conviction. The trial record includes evidence that the actions of the defendant placed the victim in fear. That the wallet was stolen was not at issue. The jury chose to accredit the testimony of the prosecution witnesses. The identification made by the victim obviously satisfied the jury. The victim, a criminal justice major at the University of Mississippi, confirmed that he was "one hundred

4

percent positive" of his identification of the defendant. The investigating officer testified that the Oil City parking lot was adequately illuminated by a security light. He characterized the description given by the victim as one of the best he had observed during his ten years as a law enforcement officer.

In our view, the jury acted within its prerogative in determining that the defendant had committed the robbery. If believed, the victim's testimony, standing alone, is sufficient to convict. State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981).

II

Next, the defendant claims that the trial court failed to adequately consider all of the sentencing options available. He contends that a shorter term of confinement or probation would have been a better alternative than the three-year jail sentence.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of

5

sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court if the sentence imposed is eight years or less. Tenn. Code Ann. § 40-35-303(a), (b).

A sentence of split confinement involves the grant of probation after the partial service of a sentence. Tenn. Code Ann. § 40-35-306. It may include a jail or workhouse sentence of up to one year with the probationary term to extend for any period thereafter up to the statutory maximum for the offense. Id.

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). That a defendant meets the minimum requirements of the Community Corrections Act of 1985, however, does not mean that he is entitled to be sentenced under the act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987). The following

offenders are eligible for Community Corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 2 [repealed], parts 1-3 and 5-7 or title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of nonviolent felony offenses;
>
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (6) Persons who do not demonstrate a pattern of committing violent offenses; and
>
> (7) Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

Initially, the defendant is ineligible for Community Corrections. Robbery is considered a violent offense. Tenn. Code Ann. § 40-30-106(a)(2) and (3). Thus the only alternative sentence available is outright probation or a term of split confinement.

The defendant, now twenty-seven years of age, is single and had no prior criminal record as either an adult or a juvenile. He dropped out of school during the eleventh grade but has completed his GED. In good physical and mental health, the defendant acknowledged that he usually drank a twelve-pack of beer on Friday and Saturday; he does not use illegal drugs. The defendant described his family as close. He has a three-year-old son for whom he provides support and had been employed in a maintenance position with Mayfield Trucking Company since

7

1993. The defendant owns an automobile and reported that his only obligations were one-half of his household bills in the approximate amount of $150.00.

The presentence report indicated neither enhancement factors nor mitigating factors. At the sentencing hearing, the defendant continued to maintain his innocence even though the trial court determined that he had been untruthful in his testimony. In imposing the three-year minimum sentence for a Range I offender and ordering the defendant to serve the term in incarceration, the trial court approved a $1,000.00 fine and denied probation noting that robbery was "serious ... one of the higher felony cases ...," observing as follows:

> [T]his is [a] frightening type of felony, ... where you rob a person out in the middle of the night somewhere, saying that you've got a gun at their back. And you may have had one. He didn't turn around to see. So he dropped his wallet and ran so you might have a [nine] millimeter or anything else. I don't know.... But you frightened the victim to death. And this is the type of offense that calls for frightening punishment.... The court is of the opinion that this makes ... a serious type felony, that probation in this case would not be appropriate at this time.

While acknowledging that the defendant did not have a record, the trial court observed that it would "depreciate the seriousness of this offense to grant probation in robbery cases." See Tenn. Code Ann. § 40-35-112(a)(3). As a Range I offender convicted of a Class C felony, the defendant was not only eligible for probation but is presumed to be a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6). To justify denial of an alternative sentencing, there must be evidence to warrant the denial. See State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App. 1991).

Here, the trial judge denied probation because he considered robberies, in general, to be too serious for alternative sentence consideration. In that regard, the trial court "imposed a standard not authorized by the law in effect at

8

the time of the sentencing." State v. Hartley, 818 S.W.2d 370, 374 (Tenn. Crim. App. 1991). In Hartley, this court ruled as follows:

> Once the legislature has specifically authorized the use of sentencing alternatives to confinement for a particular offense, trial courts may not summarily impose a different standard by which probation is denied solely because of the defendant's guilt for that offense.... To allow such a result would fail to comply with the mandates of the 1989 Act and would condone inconsistency and "unjustified disparity in sentencing" unrelated to the purposes of the Act.

Hartley, 818 S.W.2d at 374 (citation omitted).

> The 1989 Act requires the following considerations for incarceration:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). That a simple robbery was committed, standing alone, would not justify the denial of an alternative sentence.

Based upon the evidence presented at the sentencing hearing and the trial court's ruling at that point, this court would have found the trial court erred by denying some form of alternative sentence. After the imposition of sentence, however, the defendant failed to appear at the hearing on his motion for new trial. In consequence, a conditional forfeiture was issued against his bail bonding company. There was evidence indicating that a bounty hunter, James Conrad, had promised the defendant "an extension court date" in return for $350. The defendant, who failed to consult his attorney about this matter, apparently paid the

9

money.  A second bounty hunter brought the defendant into custody about a week later.  The defendant attributed his absence to confusion over court dates.

Later, at the rescheduled motion for new trial, defense counsel asked the court to reconsider an alternative sentence.  The trial court initially stated he would "suspend all except for eleven months and twenty-nine days and place him on intensive probation for two years ...."  When reminded of the defendant's failure to appear at the motion for new trial, the trial judge restored the original sentence.

The record is inconclusive as to whether the defendant was granted bail during the pendency of this appeal.  Sentencing Information Services has provided notice that the defendant had been placed in the custody of the Shelby County Correctional Center and then granted parole on November 13, 1996.  The probation issue had thus been a moot point for almost a year before this matter was placed on our docket.

In State v. Terry Moore, No. 02C01-9509-CC-00257 (Tenn. Crim. App., at Jackson, Aug. 2, 1996), this court determined that a probation revocation issue was moot where the defendant had served some time in TDOC and was thereafter placed on probation before his case reached the appellate courts:

> The concept of mootness deals with the circumstances that render a case no longer justiciable.  A moot case is one that has lost its character as a present, live controversy.  A case will generally be considered moot if it no longer serves as a means to provide relief to the prevailing party. ...
> In [this] case ..., it is obvious that this court cannot provide any meaningful relief to the Defendant even if we determine that the trial court erred by revoking the Defendant's probation.  A reversal of the trial court's order revoking the Defendant's probation would serve only to unnecessarily confuse and complicate the Defendant's status.

10

<u>Moore</u>, slip op. at 3-4 (citations omitted).

The holding in <u>Moore</u> is persuasive authority.[1]  Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
David G. Hayes, Judge


_____
Joe G. Riley, Judge

---

[1]If aware of the release of a defendant from custody, counsel for either side should notify this court of that fact if there are sentencing issues on appeal.