IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1998 SESSION

FILED

April 14, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 03C01-9704-CR-00127 |
| Appellee, | * | HAMBLEN COUNTY |
| VS. | * | Hon. James E. Beckner, Judge |
| ALICE COLLINS, | * | (Driving Under the Influence, Third Offense; Driving on a Revoked License, |
| Appellant. | * | Second Offense) |
| | * | |

For Appellant:

Ethel P. Laws, Attorney
Office of the Public Defender
Third Judicial District
1609 College Park Drive
Box 11
Morristown, TN  37813-1618

For Appellee:

John Knox Walkup
Attorney General and Reporter

Janis L. Turner
Counsel for the State
Criminal Justice Division
Cordell Hull Building, Second Floor
425 Fifth Avenue North
Nashville, TN  37243-0493

Victor Vaughn
Assistant District Attorney General
510 Allison Street
Morristown, TN  37814

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

<u>OPINION</u>

The defendant, Alice Collins, was found guilty of driving under the influence, third offense, and driving on a revoked license, second offense. The trial court imposed concurrent eleven-month, twenty-nine-day sentences with release eligibility after service of seventy-five percent of the sentences. The trial court imposed a fine of $1,110.00 for driving under the influence and $500.00 for driving on a revoked license. The defendant's driver's license was suspended for five years and her vehicle was conditionally forfeited.

In this appeal of right, the defendant claims that the evidence was insufficient and that the sentence was excessive. We find no error and affirm the judgment of the trial court.

At approximately 7:30 P.M. on June 15, 1996, Mark Moffitt, who was accompanied by his girlfriend, Stacy Spencer, was driving his vehicle on Montross Road in Morristown when he encountered an older model Chevrolet truck approaching in the opposite direction. Moffitt testified at trial that he had to drive into a yard to avoid being struck by the truck, which was "swerving all over the road." Moffitt stated that the only occupant of the truck was "an older woman [wearing] a red shirt" and drinking from a can. He observed the truck travel only a short distance before being driven onto a curb and parked.

At that point, Moffitt drove about one block to the Spencer residence where he called 911. Moffitt returned to the scene about ten minutes later, met an officer, and learned that the driver was still in the car. Moffitt identified the defendant as the driver.

2

At trial, Ms. Spencer provided a similar account. She described the driver as "an older-like lady, and she was tipping her beer can, and she had on a red shirt." She recalled that the truck, after passing the Moffitt vehicle, drove through a stop sign and barely avoided striking two telephone poles and two trucks. Ms. Spencer testified that the defendant, who was positively identified at trial, was the only occupant of the vehicle.

Officer Phil Hurst of the Morristown Police Department was the first to arrive at the scene. When he approached the truck, the defendant was lying on the passenger's side of the vehicle in a "highly intoxicated" condition. He recalled that she was dressed in a red shirt. Although the officer found no keys, he determined that the truck would start without a key. He described the defendant as smelling of alcohol with slurred speech. He testified that the defendant was unable to perform any of the field sobriety tests he administered. Officer Hurst testified that prior to her arrest, the defendant claimed that she had not been driving the truck. He stated that he had not seen the defendant's niece, Gwen Hayes, at the scene of the arrest.

Officer Mark Campbell testified that both Moffitt and Ms. Spencer made positive identifications of the defendant as the driver of the truck at the scene. It was his opinion that the defendant was under the influence of alcohol.

Although the defendant signed the implied consent provided by the police, she refused a breathalizer examination. Police were able to determine that the defendant's driver's license had been revoked.

At trial, the defendant acknowledged that she was the owner of the truck and was intoxicated at the time of her arrest. She denied, however, that she

3

was the driver. The defendant claimed that her niece, Gwen Hayes, had taken her shopping and had left her in the vehicle when Ms. Hayes' father and brother stopped them and took her to her son, who had become ill. The defendant testified that the truck was parked at the residence of a friend, Dot Calfee. While acknowledging that the truck would operate without the use of keys, the defendant denied that she had ever driven the vehicle in that manner. She claimed that Ms. Hayes had the keys at the time of the arrest. The defendant testified that the last thing she remembered was "shopping at the mall"; she only vaguely recalled her niece saying she intended to leave. The defendant claimed that both she and her niece were wearing red blouses on the date of her arrest; she acknowledged passing out in the truck.

Gwen Hayes testified that she had taken the defendant shopping at Wal-Mart on the date of the offense. She recalled that she learned from her sister-in-law, who worked at Wal-Mart, that her son had become ill and that her husband was looking for her. She claimed that she met the defendant's ex-husband, James, at a market and he agreed to take the defendant home. Ms. Hayes contended that she met her father near a friend's residence and that he drove her away from the scene. She explained that she might have "swerved a little bit" along the way when the defendant "fell over on my lap." Ms. Hayes claimed that she took the keys to the truck with her. She testified that she first learned of the arrest when James telephoned her and told her that he had pulled into the parking lot just as the police officers had.

On appeal, the state is entitled to the strongest legitimate view of the evidence, and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are

4

matters entrusted exclusively to the jury as the triers of fact.  Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978).  A guilty verdict, approved by the trial judge, resolves all evidentiary conflicts in favor of the theory of the state.  State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978).

Here, the jury chose to accredit the testimony of the prosecution witnesses and reject that offered by the defendant and Ms. Hayes.  That was their prerogative.  Eyewitnesses identified the defendant as the driver.  There was both direct and circumstantial corroborative evidence which fully supports the verdict.  In our view, a rational trier of fact could have found the essential elements of the crimes of driving under the influence and driving on a revoked license beyond a reasonable doubt.  The evidence of guilt satisfies the standard prescribed in Tenn. R. App. P. 13(e).  Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979).

Next, the defendant contends that an "inequality exists in that [she] received more than the minimum" sentence.  She contends that the sentence is not the least severe measure necessary.  When a challenge is made to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is taken are correct."  Tenn. Code Ann. § 40-35-401(d).

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-102, -103, and

-210. <u>State v. Smith</u>, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a). Misdemeanor sentences must be specific and in accordance with the principles, purposes, and goals of the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. §§ 40-35-104, -117, and -302; <u>State v. Palmer</u>, 902 S.W.2d 391, 393 (Tenn. 1995). The misdemeanor offender must be sentenced to an authorized determinant sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. Generally, a percentage of not greater than 75% of the sentence should be fixed for a misdemeanor offender; however, a DUI offender may be required to serve the full 100% of his sentence. <u>Palmer</u>, 902 S.W.2d at 393-94. In determining the percentage of the sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. <u>Id.</u>

Upon service of that percentage, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate. The trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. Tenn. Code Ann. § 40-35-302(f). The governing statute is designed to provide the trial court with continuing jurisdiction in misdemeanor cases and a wide latitude of flexibility. The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. <u>State v. Creasy</u>,

6

885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

The minimum possible sentence was one hundred twenty days. <u>See</u> Tenn. Code Ann. § 55-10-403(a)(1). In this instance, the trial court imposed a greater sentence due to defendant's prior criminal history which included several alcohol-related offenses and two felony offenses for larceny. The trial court observed that in 1994, the defendant was convicted of driving under the influence, a public intoxication conviction in 1995, and a second driving under the influence offense in 1996; the defendant was on probation when these offenses occurred. The trial court found the circumstances of this offense to be aggravated because the defendant forced another vehicle off the road and almost struck two other vehicles. <u>See</u> Tenn. Code Ann. § 40-35-114(1), (8), (13), and (16). The trial court reviewed each of the principles of sentencing and concluded that confinement was necessary to restrain the defendant because of her long, prior history of criminal conduct and to order a sentence of sufficient length in order to avoid depreciating the seriousness of the crime. The trial court also pointed out that measures less restrictive than confinement had been unsuccessfully applied to the defendant.

We concur with this assessment. In our view, the sentence imposed was appropriate. Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
William M. Barker, Judge


_____
Curwood Witt, Judge