IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

OCTOBER 1998 SESSION

FILED

February 19, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. No. 03C01-9804-CC-00147 |
| Appellee, | * | SEVIER COUNTY |
| VS. | * | Honorable James E. Beckner, Judge |
| JOHN WAYNE SLATE, | * | (Sentencing) |
| Appellant. | * | |

**For Appellant:**

Edward C. Miller
Public Defender
Fourth Judicial District
P.O. Box 416
Dandridge, TN 37725

**For Appellee:**

John Knox Walkup
Attorney General and Reporter

Todd R. Kelley
Assistant Attorney General
425 Fifth Avenue, North
Cordell Hull Building, Second Floor
Nashville, TN 37243-0493

Al Schmutzer, Jr.
District Attorney General

Steve Hawkins
Assistant District Attorney General
Sevierville, TN 37862

OPINION FILED:_____

AFFIRMED AS MODIFIED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The defendant, John Wayne Slate, was convicted of second degree murder. The trial court imposed a sentence of twenty-five years. In this appeal of right, the defendant presents the following issues for review:

> (1) whether the trial court erred by ordering the defendant to serve twenty-five years in prison; and

> (2) whether the trial court erred by signing a judgment that ordered an effective sentence of thirty-three years.

We affirm the sentence of the trial court. The sentence must be modified to provide for a twenty-four year sentence, a consecutive three-year sentence and a concurrent five-year sentence.

In 1989, the defendant was convicted in a jury trial of first degree murder, attempted jail escape, and possession of a firearm while incarcerated. The trial court imposed a life sentence for first degree murder enhanced by five years for the use of a firearm during the commission of the offense. A three-year consecutive sentence was imposed for attempted jail escape and a five-year concurrent sentence was imposed for the possession of a firearm while incarcerated. In the initial appeal, this court affirmed the judgment of the trial court. State v. John Wayne Slate, No. 101 (Tenn. Crim. App., at Knoxville, Nov. 1, 1989). Application for permission to appeal to the supreme court was denied on March 5, 1990. Thereafter, the defendant's right of post-conviction relief in the trial court was denied and the defendant appealed to this court. A panel of this court determined that the evidence of deliberation was insufficient, reversed the first degree murder conviction, and remanded the cause to the trial court for entry of a judgment of conviction for second degree murder and resentencing. John Wayne Slate v. State, No. 03C01-9201-CR-00014 (Tenn. Crim. App., at Knoxville, Apr. 27), app. denied concurring in results only, (Tenn., Oct. 24, 1997). On remand, the trial court imposed a sentence of twenty-five years under the Sentencing Reform Act of 1989. On appeal, this court reversed and remanded the cause for resentencing because the trial court failed to calculate the

2

defendant's sentence under both the 1989 and 1982 Acts as required by the holding in State v. Pearson, 858 S.W.2d 879 (Tenn. 1993). State v. John Wayne Slate, C.C.A. No. 03C01-9511-CC-00352, slip op. at 5 (Tenn. Crim. App., at Knoxville, Oct. 18, 1996), app. denied, (Tenn., Jan. 27, 1997). On remand, the trial court imposed a sentence of twenty-five years for second degree murder. The judgement form reflected an effective sentence of thirty-three years due to the other offenses.

Tennessee Code Annotated § 40-35-117 provides that persons sentenced after November 1, 1989, for crimes committed between July 1, 1982, and November 1, 1989, must be sentenced under the 1989 Act, "[u]nless prohibited by the United States or Tennessee Constitution." Tenn. Code Ann. § 40-35-117(b). Tenn. Code Ann. § 39-11-112 provides that if the 1989 Act provides for a "lesser penalty," the lesser punishment shall be imposed. In Pearson, our supreme court set forth guidelines for making certain the sentence imposed is constitutional:

> [I]n order to comply with the ex post facto prohibitions of the U.S. and Tennessee Constitutions, trial court judges imposing sentences after the effective date of the 1989 statute, for crimes committed prior thereto, must calculate the appropriate sentence under both the 1982 statute and the 1989 statute, in their entirety, and then impose the lesser sentence of the two.

858 S.W.2d at 884.

In this direct appeal of the sentence, the defendant argues that the trial court erroneously applied two enhancement factors, failed to apply several mitigating factors, and failed to review the trial transcript before arriving at a sentence. The state conceded in oral argument that our review was de novo without a presumption of correctness. It nonetheless contended that the effective thirty-three year sentence was warranted.

Our de novo review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the

3

arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987); Stiller v. State, 516 S.W.2d 617 (Tenn. 1974).

The summary of facts presented in John Wayne Slate v. State, C.C.A. No. 03C01-9201-CR-00014 (Tenn. Crim. App., at Knoxville, Apr. 27, 1992), provides an accurate and complete account of the evidence presented at trial:

> The [defendant] was prosecuted for killing David Jackson at the [defendant]'s home and for his subsequent possession of a weapon and escape attempt while in jail awaiting trial. William Bailey was tried with the [defendant] as an accessory after the fact of murder, although he changed his plea to guilty after testifying for the [defendant].
>
> From the state's perspective, the primary witness to the events was Glenda Hampton. She testified that the victim was acquainted with her brother and that she first met him on the day of the shooting. She said that she went with him to the [defendant]'s home on the evening of January 30, 1988. The [defendant] met them at the gate to the property and he and the victim hugged. They went into the house and she talked with the [defendant]'s wife, Thelma Slate, in the living room while the two men went to the kitchen.
>
> Hampton testified that she heard talking in the kitchen. At the victim's request, they all gathered in the kitchen. Hampton stated that the [defendant], his wife, William Bailey and the victim were present. She also said that two of the [defendant]'s sons came in for a few minutes. She said that the adults sat at the kitchen table talking and drinking, the [defendant] and his wife drinking wine and the others, including herself, drinking beer. She said that Bailey was drunk. She stated that Bailey pulled up her sweater and she asked him not to do it. He did it a second time and the victim and he got into an argument. She said that while they were arguing, Bailey stood up and the [defendant] "smacked him in the face."
>
> Hampton testified that the victim and the [defendant] began arguing back and forth and that the [defendant] said that the victim did not respect the [defendant]'s wife, home and family. She said that the two were standing up, pointing fingers at each other and yelling. She said that she asked the victim at about 9:25 p.m. if he was ready to go because she did not like the arguing. She said that he replied that they would leave in about fifteen minutes. She testified that

about 9:45 the victim decided to leave. She stated that "they were still arguing" and that she was getting a little scared when the victim asked her if she was ready to go.

Hampton testified that she and the victim got up to leave and that she walked to the front door with the victim behind her. As she reached for the knob, she heard a noise and immediately turned around. She stated that she saw the victim, with a hole in his head, falling to the floor. She said that the victim only had a beer can in his hand. The [defendant] was standing at the kitchen door with a gun in his hand. Although she indicated that she did not see where Bailey had been at the exact time of the shot, she stated that he was standing near her and not near the [defendant]. She said that she yelled and she admitted that she became hysterical. She said that the [defendant] did not say a word. Mrs. Slate talked Hampton into hiding in a closet in the sons' bedroom where, according to Hampton, they were sleeping. Hampton stated that she fell asleep, but later awoke and came out when the police were present.

When the police investigated, responding to a call received about 10:05 p.m., they talked to Mrs. Slate. The [defendant] and Bailey were not there. Mrs. Slate referred to an unknown man doing the shooting. Several hours into the investigation, Hampton walked out of a bedroom. The police found no weapons. The victim had been shot in the center of the forehead and he died about a week later.

In March, 1988, the [defendant], his family and Bailey were found in LaCrosse, Wisconsin, using assumed names with supporting identification. The [defendant] was returned to Sevier County. In May, 1988, a search of the [defendant]'s jail cell uncovered a loaded handgun, two hacksaw blades and a letter written by him to his family which indicated an escape plan. Saw marks were found on the cell bars.

The defense evidence related to an accidental shooting with self-defense undertones. The [defendant] and Bailey testified. Both related a history of ill will by the victim for Bailey. The [defendant] testified that the victim and Hampton came to his house in drunken conditions. He said that there were twenty or thirty empty beer cans in the victim's car and that the victim carried a six-pack into the house. He said that the victim yelled at Bailey and that an argument began. At one point, the victim began smoking a marijuana cigarette. The [defendant] said that he got upset with the victim's smoking and arguing and that he told the victim to leave.

The [defendant] testified that Hampton walked into the living room, followed by the victim. Bailey got up from the kitchen table. The [defendant] said that he saw a small gun in the victim's hand and saw Bailey pull a gun out of a pocket. The [defendant] said that he yelled for no guns, grabbed Bailey's gun and it discharged. The bullet hit the victim. The [defendant] said that Hampton became hysterical and that he was in shock, dropping Bailey's gun. He said that Bailey

5

picked up both guns. The [defendant] said that he did not know what to do, but after leaving to call for an ambulance, he and Bailey left. He acknowledged that he was scared and tried to avoid being arrested. He met with his family in Kansas and was with them and Bailey in Wisconsin when he was arrested. He admitted having a gun in the Sevier County Jail and planning to escape. He denied intending to shoot the victim.

Bailey's testimony essentially corroborated the [defendant]'s. He said that he had had problems with the victim for three to four years and that every time the victim got drunk, he would argue or fight with Bailey. He testified that both Hampton and the victim goaded him and an argument began. Bailey said that he had a .22 pistol in his pocket, but said that he had just bought it and thought that there was no clip in it. He said he saw the victim "going for something" and that he pulled out his gun. He said he knew the children had seen the victim with a pistol and he wasn't about to take any chances. He stated that the [defendant] grabbed his gun and that the shooting was an accident. He acknowledged picking both guns up and taking them with him.

On rebuttal, Sevier County Sgt. Preston Romines testified that he searched the victim's car on the night of the shooting and found one beer can, not twenty to thirty cans. He said no spent cartridges or guns were found in the [defendant]'s house or the victim's car. Investigator John Schmidt, from the LaCrosse County Sheriff's Department in Wisconsin, testified that the [defendant] told him that he, the [defendant], threw away the gun which had been used in the incident. Schmidt stated that the [defendant] said that the victim had the gun and that when the [defendant] grabbed it, it went off. He stated that the [defendant] did not say anything about grabbing a gun from Bailey.

Slate, slip op. at 2-6.

At the sentencing hearing, the fifty-three-year-old defendant testified that he has been married for seventeen years and had maintained a close relationship with his children. Since his incarceration, the defendant has obtained his G.E.D. and three years of college credits. In his discussion of the events leading up to the shooting, the defendant stated that the victim, who was a friend, came by his residence to ask to borrow money. The defendant claimed that the victim had been drinking and confided that he was "in trouble." The defendant recalled that he loaned the victim some money and that the victim left the residence only to return sometime later that evening accompanied by Ms. Hampton. The defendant claimed that both were intoxicated and that when the

victim attempted to smoke marijuana, he objected. The defendant testified that the victim became increasingly argumentative and fought with the co-defendant Bailey over a former girlfriend. The defendant contended that he asked both of them to leave but they refused. The defendant maintained that Bailey drew a gun, pointing it first at the defendant and then the victim. He claimed that he intervened at that point by grabbing the weapon because his children were in the room, and the gun discharged, striking the victim in the forehead. The defendant stated that he dropped the gun after which Bailey picked up both that gun and that of the victim. The defendant then placed a pillow under the victim's head and called for an ambulance. He contended that the shooting was accidental, that he tried to help the victim, and that he left the state because he was afraid and "half drunk."

At the sentencing hearing, the defendant presented thirty-seven exhibits to show his exemplary behavior since being incarcerated. He has successfully completed numerous programs, pursued education opportunities, participated in substance abuse counseling, spoken to youth about crime, and obtained the support and recommendation of a number of instructors, prison officials, and social services providers. The state then presented proof that the defendant had been reprimanded by prison officials for infractions on four occasions: on one occasion, the defendant had sandpaper in his possession; in another, flammable liquid was found in his locker; in a third incident he was found in possession of a dollar bill; and in a fourth, he failed to report to prison officials. The defendant contended that all of the prison charges had been dismissed.

The presentence report established that the defendant has convictions for driving under the influence, driving on a revoked license, resisting a stop, public intoxication, shoplifting, assault and battery, felony forgery, felony contributing to the delinquency of a minor, and larceny. The report shows that some of these offenses were committed while the defendant was on probation. At the sentencing hearing, the defendant disputed the accuracy of the report and pointed out several incidents in which charges had been dismissed. From 1974 until 1988, the defendant maintained steady employment as a machinist and salesman. He has a history of alcohol abuse.

7

The principles underlying the Sentencing Acts of 1982 and 1989 are similar. Both Acts were designed to ensure that every sentence is justly deserved in relation to the seriousness of the offense. Fair and consistent treatment is paramount. Confinement is appropriate, as in this case, when measures less restrictive have been unsuccessful. The potential for rehabilitation or treatment is an important consideration. All sentences should be "the least severe measure necessary to achieve the purposes of a sentence." Tenn. Code Ann. § 40-35-103.

The state argued that the sentence should be enhanced because the defendant had a previous history of criminal convictions or behavior, that he had a history of unwillingness to comply with conditions of release to the community, and had no hesitation about committing a crime in which the risk to human life was high. Tenn. Code Ann. § 40-35-111(1), (8), & (10) (Repl. 1982); § 40-35-114(1), (8), & (10) (Repl. 1990). The state withdrew its request that the sentence be enhanced because a firearm was used during the commission of the offense. Tenn. Code Ann. § 40-35-111(9)(Repl. 1982); Tenn. Code Ann. § 40-35-114(9)(Repl. 1990). The state relied instead on firearm enhancement pursuant to Tenn. Code Ann. § 39-6-1710 (Repl. 1982).

While conceding his history of convictions, the defendant argued that there was no proof in the record that he had a history of unwillingness to comply with the conditions of a sentence involving release to the community. He also objected to application of the enhancement factor that the risk to human life was high, maintaining that that factor was already accounted for in the offense. The defendant claimed mitigating factors because he did not contemplate that his conduct would cause serious bodily injury; he argued that substantial grounds exist to excuse or justify his conduct and that the offense was committed under unusual circumstances so that it is unlikely that a sustained intent to violate the law motivated his conduct. He also submitted that his conduct and achievement since incarceration should be a mitigating factor. Tenn. Code Ann. § 40-35-110(2), (4), (12), & (13) (Repl. 1982); Tenn. Code Ann. § 40-35-113(3), (11), & (13) (Repl. 1990).

8

The victim, who was attempting to leave the defendant's residence, was shot once in the forehead. He may or may not have been armed. The defendant admitted he was intoxicated at the time. There was evidence that the crime scene had been altered and that the defendant had disposed of the weapons, left the state, and attempted to avoid identification by police in Wisconsin. After being returned to Tennessee, he planned a jail escape and procured a weapon.

Under the 1982 Act, the defendant qualifies as a Range I offender. At that time, the sentence range for second degree murder was from ten to thirty-five years. Tenn. Code Ann. § 40-35-109(a), (c), & (d)(1) (Repl. 1982). The trial court, which found several enhancement factors and no mitigating factors, arrived at a sentence of thirty-five years. The following enhancement factors apply under the 1982 Act:

> (1) That the defendant has a history of criminal convictions, Tenn. Code Ann. § 40-35-111(1) (Repl. 1982);
>
> (2) That the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release to the community, Tenn. Code Ann. § 40-35-111(8) (Repl. 1982); and
>
> (3) That the defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-111(10) (Repl. 1982).

The record supports the conclusion that the defendant has both a history of criminal conduct and a history of probation violations. His prior convictions involved alcohol and violence, both of which were contributing factors to the murder of the victim. Moreover, the defendant's actions placed Ms. Hampton in danger. She was standing next to the victim when he was shot. Enhancement factor (10) may be used "where the defendant creates a high risk to the life of a person other than the victim." State v. Bingham, 910 S.W.2d 448 (Tenn. Crim. App. 1995). The evidence presented at trial and the presentence report suggest that factors (1) and (10) warrant considerable weight.

The defendant argues that he did not contemplate that his conduct would cause or threaten serious bodily injury. Tenn. Code Ann. § 40-35-110(2) (Repl. 1982). The evidence

9

supporting his second degree murder conviction, however, undermines his argument. Second, he contends that he acted under strong provocation and submits that substantial grounds exist that tend to excuse or justify his conduct. Tenn. Code Ann. § 40-35-110(3), (4) (Repl. 1982). In our view, these factors merit little or no weight. The state's theory was that the shooting was intentional and unprovoked, while the defense theory was that the shooting was an accident. The jury rejected the defense theory. Finally, the defendant maintains that the circumstances of the offense were so unusual that he did not have a sustained intent to violate the law. Tenn. Code Ann. § 40-35-110(12) (Repl. 1982). Following the offense, however, the defendant fled the scene, disposed of the weapons, and eluded authorities for months. Once captured and returned to Tennessee, he armed himself and attempted to escape from jail. These circumstances do not support his claim.

Under the 1982 Act, the defendant is eligible for a sentence between ten and thirty-five years. "Every case is judged on its own merits. Consideration of similar cases and circumstances is not inappropriate in determining the specific length of sentence .... Such consideration assists in the fair and consistent treatment of defendants and contributes to proportionate sentences ...." State v. Moss, 727 S.W.2d 229, 240 (Tenn. 1986).

In State v. Dennis Edward Galloway, C.C.A. No. 925, slip op. at 6-7 (Tenn. Crim. App., at Knoxville, Dec. 13, 1990), this court affirmed a twenty-two year sentence for second degree murder under similar circumstances. There were hostilities between the defendant and the victim. They had argued. A fight had ensued during which Galloway had stabbed the victim several times and struck him in the head. Galloway then disposed of the weapons and left the scene. The trial court enhanced the sentence because Galloway had a history of criminal convictions and probation violations, among other factors.

In State v. Donald R. West, C.C.A. No. 128, slip op. at 1 (Tenn. Crim. App., at Knoxville, Oct. 16, 1990), app. denied, (Tenn., Jan. 14, 1991), a panel of this court affirmed a thirty-

10

year sentence for second degree murder also arising under similar circumstances. West and victim were drinking and playing poker at West's residence. The victim left and later returned to find West hiding in the bedroom. When the victim kicked the bedroom door to gain entry, West instructed him to leave and then fired a weapon through the door. West then fired additional shots, killing the victim. In reviewing the sentence, this court found applicable enhancement factors that West had a previous history of criminal convictions, that he had treated the victim with exceptional cruelty, and that he had committed the offense with no hesitation when the risk to human life was high. Id., slip op. at 8. That West may have been provoked was considered a mitigating factor. Id.

Here, three enhancement factors are present, two of which are weighed heavily. The defendant is entitled to little weight for mitigating factors. While in prison, however, the defendant has demonstrated some potential for rehabilitation. Under the 1982 Act, we would impose a sentence of twenty-eight years. Furthermore, the sentence initially imposed upon the defendant was enhanced by the use of a firearm. See Tenn. Code Ann. § 39-6-1710 (Repl. 1982) (repealed 1989). That statute provided for a five-year enhancement upon a finding by the jury that the offense involved the use of a firearm. Under the 1982 Act, the sentence of twenty-eight years must be enhanced by a consecutive five-year term for an effective sentence of thirty-three years.

Turning to the 1989 Act, the defendant qualifies as a Range I offender. The sentencing range is fifteen to twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1). We are instructed to begin at the minimum within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c) (amended July 1, 1995 to provide that the presumptive sentence for a Class A felony as the midpoint in the range). If there are enhancement factors but no mitigating factors, the trial court may set the sentence above the minimum. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210. The sentence may then be reduced within the range by any weight assigned to the mitigating factors

11

present. Id. The trial court imposed a sentence of twenty-five years. The following enhancement

factors are applicable:

> (1) That the defendant has a history of criminal convictions, Tenn. Code Ann. § 40-35-114(1) (Repl. 1990);
>
> (2) That the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release to the community, Tenn. Code Ann. § 40-35-114(8) (Repl. 1990);
>
> (3) That the defendant employed a firearm during the commission of the offense, Tenn. Code Ann. § 40-35-114(9) (Repl. 1990); and
>
> (4) That the defendant had no hesitation about committing a crime when the risk to human life was high, Tenn. Code Ann. § 40-35-114(10) (Repl. 1990).

We begin at fifteen years, apply four enhancement factors, and arrive at a sentence of

twenty-four years. The defendant has demonstrated some potential for rehabilitation. Nevertheless,

because the enhancement factors weigh so heavily, a sentence of twenty-four years, one less than the

maximum possible, is deemed appropriate.

As directed by our supreme court in Pearson, under the 1982 Act we have calculated

a sentence of thirty-three years and, under the 1989 Act, we arrive at a sentence of twenty-four years.

Because the lesser of the two sentences shall be imposed, the judgment form shall reflect a Range I,

twenty-four year sentence for second degree murder.

In a related issue, the defendant argues that notations on the judgment form exceed

the "scope of the remand order ... and therefore should be modified to delete the special conditions."

The judgment form contains the following language under special conditions: "Credit time served.

This sentence is an effective sentence of thirty-three years because there are consecutive sentences

of (5) and (3) years."

The judgment form does contain an error. While the defendant has a three-year

12

consecutive sentence for attempted escape and a five-year concurrent sentence for possession of a firearm while incarcerated, he has no five-year consecutive sentence.  The use of a firearm enhancement factor, pursuant to Tenn. Code Ann. § 39-6-1710 (repealed 1989), does not apply to a sentence calculated under the 1989 Act.  <u>State v. James Michael Booth</u>, C.C.A. No. 01C01-9010-CR-00266, slip op. at 2 (Tenn. Crim. App., at Nashville, Aug. 2, 1991), <u>app. denied</u>, (Tenn., Jan 27, 1992); <u>State v. Gilmore</u>, 823 S.W.2d 566, 567 n.2 (Tenn. Crim. App. 1991).  The judgment form should reflect a Range I, twenty-four year sentence for second degree murder with a consecutive three-year sentence for attempted jail escape and a concurrent five-year sentence for possession of a firearm while incarcerated.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
David H. Welles, Judge


_____
Thomas T. Woodall, Judge

13