STATE of Tennessee, Appellee,

v.

Angie M. SMITH, Appellant.

Court of Criminal Appeals of Tennessee,
at Nashville.

July 21, 1987.

John J. Hestle, Clarksville, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, Paul H. McCutchen, Dist. Atty. Gen., Wade C. Bobo, Asst. Dist. Atty. Gen., Clarksville, for appellee.

## OPINION

JONES, Judge.

The defendant, Angie M. Smith, was convicted of the offense of fraudulent breach of trust over the value of $200 by a jury of her peers. The trial judge sentenced the defendant to serve a term of three (3) years in the Department of Corrections as a Range I standard offender. After the trial court denied her motion for a new trial the defendant appealed as of right to this Court pursuant to Rule 3(b), Tenn.R. Crim.P.

In this Court the defendant contends the evidence is insufficient to sustain her conviction for the offense of fraudulent breach of trust over the value of $200, the trial court committed error in overruling her motions for judgment of acquittal at the conclusion of the prosecution's case in chief as well as at the conclusion of all the proof, and the trial judge abused his discretion in refusing to suspend the defendant's sentence and place her on probation.

### SUFFICIENCY OF THE EVIDENCE

The defendant and her husband entered into a contractual agreement with W.G. Ladd Oil Co., Inc., regarding the operation of a service station in Clarksville, Tennessee. Ladd leased the station to the Smiths for a nominal consideration. It was agreed that Ladd would furnish gasoline to the Smiths on consignment. Ladd retained title to the gasoline, the Smiths were authorized to sell the gasoline consigned to them, and the Smiths agreed to settle with Ladd three times a week. Ladd agreed to pay the Smiths two cents for each gallon of gasoline they sold.

The station leased by the Smiths had three storage tanks. Each tank had a capacity of 4,000 gallons, or a combined total of 12,000 gallons.

Ladd maintained records on the amount of gasoline contained in the storage tanks. Before each settlement, the defendant was to take a reading of the three gas pumps and record the total number of gallons which had passed through each pump at

the close of business the previous evening.[1] These figures were furnished to Ladd the following morning. A Ladd employee would subtract the figures supplied at the last settlement from the most recent figures supplied by the defendant to compute the total number of gallons sold since the last settlement. This was translated into dollars and cents, and the defendant paid this amount to Ladd. The employee would then subtract the number of gallons paid for by the Smiths from the running total of the gasoline contained in the storage tanks to maintain an accurate inventory. This procedure was followed from the date of the contractual agreement until Ladd closed the station on August 21, 1985. During the period in question the defendant attended each settlement and supplied Ladd with the readings from the gas pumps in her handwriting.

Although the Smiths moved to Savannah, Tennessee, they continued to operate the station in Clarksville. At the end of each day the manager of the station recorded the number of gallons reflected on the face of the gas pumps. He would also count the sales receipts to make sure the receipts equalled the amount of sales made during the day. The readings from the gas pumps and the sales receipts were given to the defendant each time she came to Clarksville.

On August 19, 1985, an employee of Ladd discovered that their records reflected one of the tanks at the Smith's station contained approximately 5,000 gallons of gasoline, or approximately 1,000 gallons more than the tank's capacity. Under further examination it was discovered that their records revealed the two remaining storage tanks each contained several hundred gallons more than their respective capacities. On August 20, 1985, an employee of Ladd, realizing the defendant was due in the office the following day for a settlement, went to the Smiths' station and recorded the total number of gallons reflected on the face of each of the three pumps.

The defendant went to the offices of Ladd on August 21, 1985, to settle for the preceding weekend. The readings she furnished Ladd were 360 gallons less than the pump readings taken by the Ladd employee the previous evening. Later that day Ladd officials closed the station to protect the gasoline remaining in the storage tanks. In the process an employee of Ladd obtained the record book maintained by the manager.

The pump readings recorded by the manager were compared with the readings furnished Ladd by the defendant. This comparison revealed that between August 2, 1985, and August 21, 1985, the defendant had understated the number of gallons of gasoline sold by 3,507 gallons. This resulted in a loss to Ladd of approximately $4,000.00.

The defendant contended she did nothing wrong. She testified that she furnished Ladd with the readings given to her by the manager; and she intimated the manager might have stolen from her and her husband. She could not account for the variance found between the readings recorded by the manager and the readings she furnished to Ladd. She did not know what happened to the money from the sale of the unreported gasoline. She denied receiving the money and converting it to her use.

When the defendant challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e). This rule is applicable to findings of guilt based upon direct as well as circumstantial evidence. *Farmer v. State*, 208 Tenn. 75, 343 S.W.2d 895, 897 (1961); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn.1977).

In determining the sufficiency of the evidence we do not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978); *State v. Hatchett*,

---

**1.** Each gas pump contained a device which counted the number of gallons passing through the pump. The device maintained a running total of the number of gallons, and the devices were not reset after each settlement.

560 S.W.2d 627, 630 (Tenn.1978); *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973); *Braziel v. State*, 529 S.W.2d 501, 505 (Tenn.Crim.App.1975). Nor may we substitute our inferences for those drawn by the trier of fact in circumstantial evidence cases. *Liakas v. State*, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn.Crim.App.1978). To the contrary, we are required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage*, supra.

Questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage*, supra; *State v. Grace*, supra; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). In *Grace* our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d at 476.

■ Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *State v. Grace*, supra, the defendant has the burden of proving to this Court that the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, supra. This Court will not disturb a verdict of guilt, which has been approved by the trial judge, on the facts unless the evidence contained in the record is insufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle*, supra.

■ A criminal offense may be established exclusively by circumstantial evidence. *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451 (1958); *Duchac v. State*, 505 S.W.2d 237 (Tenn.1973); *State v. Le-Quire*, 634 S.W.2d 608, 614 (Tenn.Crim. App.1981); *State v. Hailey*, 658 S.W.2d 547, 552 (Tenn.Crim.App.1983). However, before a defendant may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances

"must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford*, 225 Tenn. 478, 470 S.W.2d 610, 612 (1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *State v. Crawford*, supra, 470 S.W.2d at 613.

■ We are of the opinion there is an abundance of evidence contained in the record from which a rational trier of fact can conclude that the appellant is guilty of fraudulent breach of trust over the value of $200.00. Tenn.R.App.P. 13(e); *Jackson v. Virginia*, 434 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Tuggle*, supra. The elements of this offense are clearly established in the record beyond a reasonable doubt and to a moral certainty. See T.C.A. § 39-3-904, et seq.

## FAILURE TO GRANT MOTION FOR JUDGMENT OF ACQUITTAL

The defendant contends the trial court committed error in denying the motion for a judgment of acquittal at the conclusion of the State's case in chief. She also contends that the trial court committed error in denying the motion for judgment of acquittal made at the conclusion of all the proof.

■ After the defendant made the motion for judgment of acquittal at the conclusion of the State's proof the defendant elected to testify in behalf of her defense. Thus, this issue has been waived. *Mathis v. State*, 590 S.W.2d 449, 453 (Tenn.1979); *State v. Copeland*, 677 S.W.2d 471, 473–474 (Tenn.Crim.App.1984); *State v. Carter*, 681 S.W.2d 587, 588 (Tenn.Crim.App.1985).

■ The defendant has likewise waived the issue concerning the denial of her motion for judgment of acquittal at the conclusion of all the proof. In her argument in support of this issue she does not make reference to the record nor does she cite authority in support of her position. See Tenn.R.App.P. 27(a)(7) and Tenn.Ct.App.R. 10.

This issue is without merit.

## DE NOVO REVIEW OF SENTENCE

The defendant contends the trial court should have suspended her sentence and placed her on probation. The State contends the trial judge's refusal to suspend the defendant's sentence and place her on probation was proper, and this Court should affirm the sentence.

When the defendant challenges the length, range, or manner of the service of a sentence, it is the duty of this Court to conduct a *de novo* review of the sentence without a presumption of correctness. T.C.A. § 40–35–402(d).

In conducting a *de novo* review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the defendant in his own behalf, and (h) the defendant's potential or lack of potential for rehabilitation or treatment. See §§ 40–35–103 and 210.

The trial court correctly sentenced the appellant to a Range I sentence as a standard offender. The length of the sentence imposed by the trial court is proper, and we adopt this sentence. The defendant is 39 years of age, married, and the mother of four children ranging in ages from 17 to 3 years of age. Since her marriage to Charles Kenneth Smith, she has assisted in the management and operation of the family businesses. Presently, she works in the family restaurant operated by her husband. Prior to her arrest and conviction in this case she had never been arrested, much less convicted, for any criminal offense.

The defendant's husband was convicted of embezzlement and passing bad checks prior to their marriage. As a result of the operation of several businesses, the defendant's husband was indebted to several creditors who had supplied him with auto parts, merchandise for resale and had rendered services for them. Before the sentencing hearing was conducted, the defendant had filed a petition for bankruptcy to obtain relief from the numerous obligations due and outstanding. The trial court found the defendant was indigent, and ordered that the defendant be furnished a transcript of the proceedings at the cost of the State of Tennessee.

The trial court based his denial of probation upon the circumstances of the offense and the need for deterrence. In ruling on this issue the trial court said:

"... I think that it is a serious offense. It appears to me that this is not an offense like stealing ... $5,000 at one time, this is a series of offenses that took a sustained criminal intent over a considerable period of time rather than one isolated theft.

"Based on that and the deterrent factor, of course, I find no remorse on the part of the defendant. She only cited that she didn't benefit from the money.

"... I don't find that the defendant had carried the burden of proof to sustain a suspended sentence...."

While the distinguished trial judge properly refused to suspend the defendant's sentence and place her on probation, he did so for the wrong reasons. We believe that probation should have been denied because of the defendant's untruthfulness as a witness, her attitude towards the crime and, as the trial judge noted, her lack of remorse and repentance.

The defendant's testimony was impeached in many respects. She could not account for the discrepancies between the pump readings maintained by the station manager and the readings the defendant furnished Ladd. She attributed this to the fact an employee of Ladd had confiscated her records. However, rebuttal witnesses revealed that the Ladd employee did not take the records. To the contrary, the records were delivered by the station manager to a person designated by the defendant. She also intimated the discrepancies were caused by the manager, who apparently was stealing from her and her husband. In other words, her testimony was incredible to say the least. She was also less than candid in revealing the outstanding indebtedness owed by the defendant and her husband. In this jurisdiction the defendant's truthfulness at trial or a sen-

tencing hearing is a permissible factor for a court to consider when determining the issue of probation. See *State v. Neeley,* 678 S.W.2d 48, 49 (Tenn.1984); *State v. Bunch,* 646 S.W.2d 158 (Tenn.1983); *State v. Lewis,* 641 S.W.2d 517 (Tenn.Crim.App. 1982); *State v. Morton,* 639 S.W.2d 666, 669 (Tenn.Crim.App.1982). Also, the defendant's cavalier attitude toward the crime she committed is a permissible factor for a court to consider when determining the issue of probation, *State v. Horne,* 612 S.W.2d 186 (Tenn.Crim.App.1981) as is the defendant's lack of remorse and repentance for having committed the crime. *State v. Pierson,* 678 S.W.2d 905 (Tenn.1984); *Ball v. State,* 604 S.W.2d 65 (Tenn.Crim.App. 1979); *State v. Richerson,* 612 S.W.2d 194 (Tenn.Crim.App.1980); *State v. Chestnut,* 643 S.W.2d 343, 353 (Tenn.Crim.App.1982).

 We do not feel the trial judge should have denied probation on the ground of deterrence. The Tennessee Criminal Sentencing Reform Act of 1982 requires that any sentence imposed by a court must be based on evidence contained in the record of the trial and sentencing hearing or the presentence report. T.C.A. § 40–35–210(d). See *State v. Travis,* 622 S.W.2d 529, 532 (Tenn.1981). This Court has said on numerous occasions there must be some evidence contained in the record "that the sentence imposed will have a deterrence effect within the jurisdiction" before a trial judge can deny probation on the ground of deterrence. *State v. Horne,* 612 S.W.2d 186, 187 (Tenn.Crim.App.1980); *State v. Vance,* 626 S.W.2d 287, 290 (Tenn. Crim.App.1981). See *State v. Bunch,* 656 S.W.2d 404, 406 (Tenn.Crim.App.1983) (Daughtrey, J. dissenting). If the rule were otherwise, and trial judges were permitted to assume facts not in the record, base a sentence on extraneous facts, or take judicial notice of facts not available to this Court nor included in the record transmitted to this Court, it would be impossible for this Court to conduct a *de novo* review of the sentence imposed by the trial judge. T.C.A. § 40–35–402(d). As noted above, our review is to be conducted "without a presumption that the determinations made by the [trial] court from which the appeal is taken are correct." T.C.A. § 40–35–402(d).

The record in this case is void of any evidence that the denial of probation will have a deterrent effect within Montgomery County. If the offense of fraudulent breach of trust constituted a particular problem in Montgomery County, the State could have presented a law enforcement officer from Montgomery County as a witness at the sentencing hearing; and this witness could have related this fact to the trial judge. See *State v. McColgan,* 631 S.W.2d 151, 156 (Tenn.Crim.App.1982); *State v. White,* 649 S.W.2d 598, 602 (Tenn. Crim.App.1982).

While there is an element of deterrence present in every criminal case, the significance of this factor in restraining the defendant or curbing the propensity of others to commit similar acts varies with the nature of the offense and the manner in which the offense was committed. *State v. Michael,* 629 S.W.2d 13, 14 (Tenn.1982). Thus, deterrence, as a factor, must be viewed "in the context of each case and assign[ed] ... such weight, credit and value as the circumstances warrant." *State v. Michael,* supra at 15. In this case we are of the opinion the deterrent effect resulting from the denial of probation will have little, if any, value. The likelihood of others being deterred from committing criminal acts is remote. Also, the denial of probation is not necessary to deter the defendant from engaging in future criminal conduct. As we noted above, the defendant has lived thirty-nine (39) years without being arrested or convicted for a criminal offense. She now knows the impact incarceration will have upon the lives of her children. And, if she was used as a pawn by her husband, as some citizens in the community believe, she now knows the consequences of her involvement in such schemes. In summary, the chances are the defendant committing another criminal act are remote.

 We do not believe the trial judge should have denied probation because of the circumstances of the offense. As a general rule, probation may not be denied because of the nature and circumstances of the offense when the General Assembly of this State has provided the

possibility of a suspended sentence for the offense. *Stiller v. State,* 516 S.W.2d 617 (Tenn.1974); *State v. Barber,* 595 S.W.2d 809, 810 (Tenn.1980); *State v. Travis,* 622 S.W.2d 529, 534 (Tenn.1981); *Mattino v. State,* 539 S.W.2d 824, 828 (Tenn.Crim.App. 1976); *Franks v. State,* 543 S.W.2d 613, 615 (Tenn.Crim.App.1976). See *State v. Smith,* 662 S.W.2d 588, 590 (Tenn.1983). *State v. Bunch,* 656 S.W.2d 404, 405 (Tenn. Crim.App.1983). In *State v. Travis,* supra, our Supreme Court ruled that the nature and circumstances of the offense must be described as "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree", and this factor must outweigh all of the other *Stiller* factors before probation may be denied on this ground. 622 S.W.2d at 534.

While we agree with the trial judge the crime committed by the defendant is serious, we do not believe the nature and circumstances of the offense may be described as being especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree. Nor do we believe that this factor outweighs the remaining *Stiller* factors which must be considered. See *Stiller v. State,* supra, [defendant forged bank notes in the sum of $26,000, embezzled bank funds totaling $65,740, and made false banking entries in the aggregate of $45,-000, and the defendant was held to be entitled to probation]. This case and our holding in *State v. Chestnut,* supra, are distinguishable upon the facts. In *Chestnut,* the defendant was convicted of twenty-one (21) counts of embezzlement. The facts revealed the defendant in that case committed one hundred fifty-seven (157) acts of embezzlement over a period of eleven (11) months resulting in a loss to the victim of $39,000. Here, the period was approximately three (3) weeks, there was but a handful of transactions, and the loss to the victim was approximately $4,000.

■ This Court is of the opinion the defendant should not be sent to the Department of Corrections to serve her sentence or be required to serve the entire sentence imposed by the trial judge. Nothing will be gained by "warehousing" this particular defendant in the Department of Corrections. See *State v. Stiller,* supra; *Mattino v. State,* supra. Furthermore, there is no evidence of substance contained in the record that a lengthy incarceration is in the public's or the defendant's best interest. See generally *State v. Grear,* 568 S.W.2d 285 (Tenn.1978). It is common knowledge the penal institutions of this State are filled to capacity with inmates who have committed more serious offenses than the defendant. And, as a result of the mandate issued by the United States District Court for the Middle District of Tennessee regarding the population of our penal institutions, there are literally hundreds, perhaps thousands, of convicted felons confined in local jails awaiting transportation to a Department of Corrections facility when space permits. It was for this reason that the Tennessee General Assembly changed the method of reviewing sentences in criminal cases. See T.C.A. § 40–35–402(d). When, as here, the defendant has an excellent chance for rehabilitation, requiring the defendant to serve her sentence in a penitentiary operated by the Department of Corrections will further complicate an already complex situation while serving no useful purpose.

We remand this cause to the trial court for the entry of an order requiring the defendant to serve sixty (60) calendar days in the county jail or workhouse. After the service of this jail sentence the defendant shall be placed on supervised probation for a period of two (2) years. The trial judge may require the defendant to comply with any of the requirements enumerated in T.C.A. § 40–35–303(d) as a condition of her probation.

As modified the judgment of the trial court is affirmed. This cause is remanded to the trial court for the entry of an order consistent with this opinion.

SCOTT, J., and ALLEN C. CORNELIUS, Jr., Special Judge, concur.