**STATE of Tennessee, Appellee,**

**v.**

**Pamela Bowman KEAR, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 12, 1991.

This section has no application to the covenant for maintenance assessments contained in Article V.

James W. Greenlee, Sevierville, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Bettye Springfield–Carter, Asst. Atty. Gen., Nashville, Al Schmutzer, Jr., Dist. Atty. Gen., Sevierville, for the State.

## OPINION

WADE, Judge.

The defendant, Pamela Bowman Kear, entered pleas of guilt to two counts of the sale of cocaine, under 26 grams, for which she received concurrent, four-year sentences to be served in the Sevier County Jail.

The issue on appeal is whether the trial court erroneously denied probation, community corrections, or split confinement.

We affirm the judgments of conviction but modify the sentencing order.

On December 10, 1988, a confidential informant bought three grams of cocaine from the defendant as a part of an undercover operation. Three days later, the defendant sold two grams of cocaine in the presence of the informant and an undercover agent. As a part of the plea bargain agreement, the district attorney general deferred to the trial court the question of how the sentence was to be served.

■ Although the offenses occurred in 1988, the sentences were imposed fourteen months later, after November 1, 1989. Consequently, both the sentencing and this appeal are controlled by the Criminal Sentencing Reform Act of 1989, Tenn.Code Ann. § 40–35–117(b). When a challenge is made to the length, range, or manner of the service of sentence, it is the duty of this court, under the new enactment, to conduct a *"de novo* review ... with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40–35–401(d). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives, (4) the nature and characteristics of the offense, (5) any mitigating or enhancing factors, (6) any statement made by the defendant in her own behalf, and (7) the defendant's potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–102, –103 and –210; *State v. Smith,* 735 S.W.2d 859, 863 (Tenn.Crim. App.1987).

■ Among the factors applicable to the defendant's application for probation are the circumstances of the offense; the defendant's criminal record, social history, and present condition; and the deterrent effect upon and best interests of the defendant and the public. *State v. Grear,* 568 S.W.2d 285 (Tenn.1978).

■ The defendant, 29 years old at the time of her sentence, graduated in 1977 from Doyle High School, where she was a cheerleader. A resident of Knox County until three years prior to these offenses, the defendant had no prior record. A partial presentence report noted that she "does not have a known criminal reputation with local law enforcement." The record indicates that the defendant's family is supportive; her parents, grandmother, and brother attended the sentencing hearing.

The defendant is employed as an assistant manager with a large retail distributor of fireworks. The owner of the business describes her as in the top five percent of 150 employees, as having a great future, and headed for a managerial position. The defendant was previously employed as a receptionist, assistant program director for a radio station and a waitress and bartender (to which her parents objected) at several restaurants in Knox and Sevier Counties.

The vice principal of Sevier County High School recommended leniency for this defendant on the basis that she had already been rehabilitated by the time of the sentencing hearing. The defendant had apparently volunteered to relate her personal experiences with drugs as a means of deterring use by high school students. The school apparently accepted the offer.

The defendant made the following comment in her own behalf in response to questioning by the court:

I would just like to say that I'm ... glad it happened, because it's really changed my life and the fact that I have a new job and a new respect on life and how I feel about things and I'd like to be given another chance to live my life and serve the community and help others as much as I could and I'd like to help other people not to do and make the mistakes I've made. It won't happen again, ever.

The trial court made the following observation:

[Y]ou've cut your associations. Everything I've seen in the file tends to show you cut your associations. You have worked faithfully for your new employer. They think well of you. Your immediate supervisor does. The owner of the business does.

The trial court made lengthy comments about the defendant and her conduct in this instance. Among other things, it ruled that the defendant demonstrated "talents," "good social skills," "good job as manager," "character," "dedication," and "intelligence." Yet the trial court denied probation, alternative sentencing and split confinement on the basis that this defendant was "a drug dealer," "an indispensable soldier of the drug lords of Colombia."

During imposition of the sentence, the trial judge exhibited considerable frustration with the problems of illegal drugs and their adverse effects upon the community. That concern is universal. Yet sentencing guidelines are appropriate functions of our legislature. Our system of jurisprudence is based in great measure upon the consideration of legal precedent ... consistent treatment of similar factual situations. In *State v. Patricia "Sissy" Woody*, No. 148, 1990 WL 147 (Tenn.Crim.App., Knoxville, January 4, 1990), a different panel of our court held, under almost identical circumstances, as follows:

Indeed, Woody did "deal" drugs, for she pleaded guilty to three separate incidents of "drug dealing" [to an undercover agent].

[Yet] [w]e think the trial judge misapprehends the Community Corrections Act, for nothing in it prevents a drug offender such as Woody from being sentenced under its provisions. In fact, the Act specifically recognizes that such offenders are eligible for sentencing in the community.

Woody ... may benefit from an alternative sentence. In like measure, we think that the interest of society in general and the community in particular may be better served were Woody's rehabilitative process to begin and continue in the community. *See State v. Huff,* 760 S.W.2d 633, 638 (Tenn.Crim.App.1988).

Slip. op. at 4.

The Criminal Sentencing Reform Act of 1989 as it was written at the time the defendant was sentenced, adopted, among others, the following principle:

Defendants who ... receive a sentence of eight years or less are *presumed* in the absence of evidence to the contrary *to possess capabilities for rehabilitative alternative sentencing options* in the discretion of the court and *these are specifically encouraged.*

Tenn.Code Ann. § 40–35–102(6) (Emphasis added).

Other sentencing purposes mandated by our legislature direct courts "to assure fair and consistent treatment of all defendants

by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions." Tenn.Code Ann. § 40–35–102(2).

The trial court found that this defendant was not only capable of rehabilitation but had, to an extent, already accomplished that goal. The legislature directs trial courts to encourage rehabilitation, "where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants." Tenn.Code Ann. § 40–35–102(3)(C). Finally, and perhaps the underlying basis for the legislature's resolve to place greater emphasis upon community-based sentencing, there is the lack of available prison space, a fact that has resulted in the significant overcrowding[1] of local jail facilities:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

Tenn.Code Ann. § 40–35–102(5).

This is the defendant's first offense. "Measures less restrictive than confinement" have never been applied. Tenn.Code Ann. § 40–35–103(1)(C). Sentences under the new Act are to "be the least severe ... necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40–35–103(4). Rehabilitation had been partially achieved between the commission of the offenses and the date of sentencing. We also point out that the law requires trial courts "to use alternatives to incarceration that include requirements of reparation, victim compensation, and/or community service." Tenn.Code Ann. § 40–35–103(6).

One of the purposes of community corrections was to reduce the number of non-violent felony offenders committed to jail by providing non-custodial options. The defendant meets the eligibility criteria. Trial courts may impose participation in a community-based alternative "as a condition of probation in conjunction with a suspended sentence, split confinement, or periodic confinement...." Tenn.Code Ann. § 40–36–106(f). And while these guidelines may not be particularly popular with an understandingly frustrated public, courts are nonetheless duty bound to apply the law ... even if it means the grant of leniency or a second chance.

Society has been offended by this defendant's conduct. If she has made other sales of cocaine, the damage done may be immeasurable. Yet we must hold that the defendant has overcome the presumption of correctness of this sentence. A clear legislative policy combined with prior legal precedent mandates revision of the sentence. The term of four years is affirmed. Split confinement is ordered. The defendant has served, as we calculate, 52 days in jail; we think that sufficient. The case is remanded to the trial court for the purpose of placing the defendant in a community corrections program for the duration of her sentence. That shall include a reasonable amount of community service and such other conditions as the trial court may deem reasonably appropriate. Consideration may be given to any of the defendant's circumstances, favorable or not, which have occurred during the appeal process. If the community corrections program is not available, the defendant shall be granted intensely supervised probation under conditions ordered by the trial court.

The judgment is affirmed as modified. The case is remanded for sentencing to community corrections.

PEAY and TIPTON, JJ., concur.

---

**1.** *State v. Smith,* 735 S.W.2d 859, 865 (Tenn. Crim.App.1987): "[A]s a result of the mandate issued by the United States District Court for the Middle District of Tennessee regarding the population of our penal institutions, there are literally hundreds, perhaps thousands, of convicted felons confined in local jails awaiting transportation to a Department of Corrections facility when space permits."