# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### FEBRUARY SESSION, 1999

FILED

May 14, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9806-CC-00204 |
| | ) | |
| Appellee, | ) | |
| | ) | COCKE COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. REX HENRY OGLE, JUDGE |
| NORMAN SUTTON, | ) | |
| | ) | |
| Appellant. | ) | (VOLUNTARY MANSLAUGHTER) |

FOR THE APPELLANT:                    FOR THE APPELLEE:

EDWARD CANTRELL MILLER          JOHN KNOX WALKUP
District Public Defender                Attorney General & Reporter

SUSANNA LAWS THOMAS            MICHAEL J. FAHEY, II
Assistant Public Defender              Assistant Attorney General
102 Mims Avenue                      2nd Floor, Cordell Hull Building
Newport, TN  37821-3614             425 Fifth Avenue North
                                    Nashville, TN  37243

                                    AL C. SCHMUTZER, JR.
                                    District Attorney General

                                    WILLIAM BROWNLOW MARSH, II
                                    Assistant District Attorney General
                                    339-A East Main Street
                                    Newport, TN  37321

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Norman Sutton, appeals as of right following his sentencing hearing in the Cocke County Circuit Court. In a two-count indictment, Defendant was charged with two (2) counts of first degree murder for the deaths of Martha Williams, Defendant's sister, and Clinton Hance. Defendant entered a guilty plea to voluntary manslaughter on both counts. The Defendant's sole issue on appeal is the failure of the trial court to allow Defendant to serve an alternative sentence rather than incarceration. We affirm the judgment of the trial court.

When an accused challenges the length, range or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." Tenn. Code Ann. § 40-35-102(5). Thus, a defendant sentenced to eight (8) years or less who is not an offender for whom incarceration is a priority is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(3) - (4). The court should also consider the

potential for rehabilitation or treatment of the defendant in determining the sentence alternative. Tenn. Code Ann. § 40-35-103(5).

While we do have the transcript from the sentencing hearing, the Defendant failed to include the transcript of his guilty plea hearing within the record. However, two (2) separate statements of the Defendant detailing the events precipitating the deaths of the victim were entered as exhibits at the sentencing hearing. In a statement given by Defendant on December 1, 1996 at 3:11 a.m., he stated as follows:

> I was downtown drinking with Martha Williams and Clinton Hance at Freddy's Bar and the Sidewalk and came home. Martha and Clinton started argueing (sic). I went to my room and Martha opened the door. I told Martha, "I ain't gonna take your s___ no more." She spouted off at me and called me a name. I told her to go on in and lay down. She jumped at me and I shot her. Clinton jumped up and had a knife in his hand, called me a "son-of-a-bitch" and I shot him. I am not sorry I shot Clinton but I am sorry I shot Martha. Clinton was a sorry son-of-a-bitch.

On the following day, the Defendant provided yet another statement as follows:

> My sister, Martha Williams, had been to Niagara Falls to see Richard Williams' mother, she was sick. They got back here on Friday night, November 30, 1996. Me, my sister, Richard and Clinton Hance lived at Richard and Martha's trailer. I've been living at the trailer for about three years and Clinton had been living at the trailer for two years. The little boy at the trailer was Scott Allen Williams. On Saturday, Dec. 01, 1996, I took my sister to Freddies Bar. Clinton works at Freddies. We also went over to the Sidewalk. Me, Martha and Clinton were all drinking. I got in an argument with some one at the Sidewalk, but I don't remember who. Clinton and my sister Martha go together and Martha sleeps with Clinton when Richard is gone. Richard drives a truck. Richard and Martha have been married about 4 years this time. They had been married before but got a divorce. We left the Sidewalk around closing time and went back to the trailer. We didn't drink anymore at the trailer. I keep a 32 pistol at the foot of my bed in the top of the chester (sic) drawers. Clinton and Martha was arguing (sic), they argue all the time about something. They were arguing in the hall near the bathroom. Clinton looked like he had a knife in his hand. I tried to stop Clinton and Martha from arguing. Clinton threatened to kill me. I got the pistol from the drawer. I was going to protect myself. Clinton came toward me, Martha got between us and I shot and hit her. I didn't mean to shoot her but she got between us. Clinton was still coming at

me with something that looked like a knife. I shot Clinton. I shot twice. After the shooting I called 911 and told them I shot my sister and Clinton. I waited on the deputies and gave them my gun. We were all drinking and arguing and I thought Clinton was going to cut me. Me and Clinton had never fought before. I never saw Richard, he must have slept thru it all. I don't know if Scott was awake or not. I loved my sister and I liked Clinton but I thought he was going to hurt me.

Medical evidence indicated that Defendant's blood alcohol level at the time of the offense was 0.26. The State's evidence at the sentencing hearing centered upon the impact of the loss of the victim, Martha Williams, by her family.

The Defendant presented testimony from his daughter, Sherry Cameron. Cameron stated that the Defendant had always been very close to his sister, the victim. He lived with Martha in her trailer. Cameron described the Defendant's medical problems, including alcoholism and emphysema. However, Cameron stated that she was willing to take the Defendant into her home and care for him if he was placed on probation. Cameron described that Defendant was trying to defend the victim, Martha, from Clinton Hance at the time of the shooting.

The Defendant testified in his own behalf, stating that he loved his sister dearly and was very close to her. Defendant described that he "was the best of friends" with Clinton Hance until Hance threatened Defendant's life with a knife and knocked Martha Williams into the bathroom. After hearing Hance and Martha Williams scuffling, Defendant came out into the hallway where he was threatened by Clinton Hance. Defendant reached into his chest of drawers for his pistol and fired. As he fired, Defendant explained that his sister jumped between he and Clinton Hance. As Hance "was threatening to cut my guts out," Defendant fired again and feared for his life. Defendant admitted to the trial court that he had been drinking that night.

After finding that the Defendant's version of the facts were questionable and that Defendant should serve the maximum sentence of six (6) years, the trial court found as follows on the issue of alternative sentencing:

> The Court further finds that because of the totality of the circumstances that justice would be completely denied, that justice would be a joke if you can gun down two people in a situation like this. And in fact the Court would say that I am sure that this situation was aggravated by the use of intoxicants by all of the parties. You know, I wasn't there, I don't know, but to on one hand find that this defendant quickly and without hesitation during a period of extreme intoxication guns down two people for no reason and then to place him on probation I think would, as I say, justice would be a joke. So this Court cannot place him on probation due to the nature of the offense and the manner in which it happened.
>
> In essence, in fact it would be bad enough in this situation if he killed one person, but to kill two, to shoot one in the back, certainly this Court would think that it would be a great injustice for that to happen.
>
> I'm sorry for him, I'm sorry that he's sick . . . But when you get mad and when you get drunk and when you take weapons and when you gun down people over nothing, I think justice demands that the sentence be executed.

The Defendant argues that he meets the statutory requirements to be presumed eligible for probation and that the trial court "did not make findings related to the considerations set forth in statute, particularly [Defendant's] lack of criminal history and long employment record, his age, physical infirmities and potential for rehabilitation." While Defendant agrees that the enhancing factors and seriousness of the offense correctly resulted in the maximum sentence on both counts, he asserts that the manner of the service of his sentence was not treated by the court as an independent issue. The State argues that the trial court properly relied upon the seriousness of the offense and the circumstances surrounding its commission, and probation would have depreciated the seriousness of the offense. Tenn. Code Ann. § 40-35-103(1)(B).

When imposing a sentence of total confinement, our Criminal Sentencing Reform Act mandates the trial court to base its decision on the considerations set forth in Tennessee Code Annotated section 40-35-103. These considerations which militate against alternative sentencing include: the need to protect society by restraining a defendant having a long history of criminal conduct, whether confinement is particularly appropriate to effectively deter others likely to commit a similar offense, the need to avoid depreciating the seriousness of the offense, and the need to order confinement in cases in which less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1).

This court has recognized that the voluntary combination of alcoholic intoxication with dangerous instrumentalities is a matter of serious public concern which may justify a denial of probation. State v. Bobby Russell, No. 03C01-9608-CR-00319, slip op. at 8, Polk County (Tenn. Crim. App., at Knoxville, September 16, 1997), perm. app. denied (Tenn. 1998) (*citing* State v. Cleavor, 691 S.W.2d 541 (Tenn. 1985)) ; State v. Butler, 880 S.W.2d 395, 401 (Tenn. Crim. App. 1994). Defendant's conduct was the result of his voluntary combination of intoxication and firearms, and his reckless conduct and disregard for the lives of his family and friends justifies some confinement to avoid depreciating the seriousness of the offense. Id. (*citing* Tenn. Code Ann. § 40-35-103(1)(B)). A court may deny probation solely from the circumstances of the crime itself, if the crime as committed was "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." State v. Hartley, 818 S.W.2d 370, 374 (Tenn. Crim. App. 1991). Under the circumstances of this shocking and

reprehensible offense, we conclude that the seriousness of the offense adequately supports the trial court's decision to deny probation.

While Defendant is correct that he meets the statutory requirements for presumptive eligibility for probation, his lack of a criminal record and history of employment and various medical maladies will not suffice to overcome the seriousness of this offense. Two (2) lives were lost as a result of Defendant's firing of a deadly weapon while he was extremely intoxicated. One of the victim's, Mr. Hance, was shot in the back. The trial court appropriately relied upon the need to avoid depreciating the seriousness of this offense in denying an alternative sentence. State v. Michael Benson, No. 02C01-9708-CC-00333, Hardin County (Tenn. Crim. App., at Jackson, July 21, 1998), perm. app. denied (Tenn. 1999) (Voluntary manslaughter of the victim while defendant was under the influence of an intoxicant and used a deadly weapon was sufficient to justify a total denial of alternative sentencing where defendant pled guilty to voluntary manslaughter of brother-in-law).

The burden is on the Defendant to show that the sentence he received is improper and that he is entitled to probation. Ashby, 823 S.W.2d at 169. Defendant has failed to meet this burden, and we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
JERRY L. SMITH, Judge

_____
L. T. LAFFERTY, Senior Judge