IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 3, 2003

## STATE OF TENNESSEE v. JOHN WAYNE BRITT

**Appeal from the Circuit Court for Henderson County**
**No. 01027-3     Roger A. Page, Judge**

_____

**No. W2002-01923-CCA-R3-CD - Filed December 31, 2003**

_____

Indicted for the February 10, 2001 first degree premeditated murder of Anthony Sims, the defendant, John Wayne Britt, was convicted by a Henderson County jury of second degree murder. Following a sentencing hearing, the trial court sentenced the defendant to 25 years in the Department of Correction. Now on appeal, the defendant claims that insufficient evidence supports his conviction and that his sentence is excessive. We disagree and affirm the trial court's judgment.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

Lloyd R. Tatum, Henderson, Tennessee, for the Appellant, John Wayne Britt.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; Garry G. Brown, District Attorney General; and Bill Martin, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

In his first issue, the defendant challenges the sufficiency of the convicting evidence. The defendant posits that the witnesses' accounts of this tavern homicide were so diverse and that the witnesses themselves were so intoxicated that no reasonable trier of fact could have relied upon the state's evidence to convict the defendant of second degree murder.

The defendant's three-day trial began on December 10, 2001. In the light most favorable to the state, the trial evidence is summarized as follows. On the night of February 10, 2001, a large crowd was patronizing the Golden Spur Tavern in Lexington. The patrons included the victim, the defendant, Aaron Lyles, James Lee Wood, and David Burton. The victim and Lyles were cousins. Sometime during the evening's festivities of playing pool, dancing, and drinking beer, either Lyles or the victim left his barstool and went to the rest room. When he returned, he found

the defendant occupying his stool, and words were exchanged among Lyles, the victim, Wood, and the defendant. According to Lyles, he had been the one occupying the stool, and when he returned from the rest room and argued with the defendant then seated on the stool, the victim came to Lyles's aid and told the defendant that if the defendant wanted to start trouble, he would have to deal with the victim. Perhaps 30 to 45 minutes later, the defendant went outside, and soon Lyles, Wood, and Burton followed. The victim may or may not have gone outside at this time.

In any event, in front of the tavern, the men began "mouthing." Some witnesses recounted that the defendant removed his jacket and held an open knife in his right hand. Lyles went to his Jeep and obtained an automatic pistol, which he brandished in front of the defendant and others. Wood tried to intervene; he took the pistol away from Lyles and put Lyles in the Jeep. Burton took the gun away from Wood and gave it to the bartender. The defendant tried to get into the Jeep and yelled threats at Lyles. At some point, the victim came outside and stood by the front door drinking a beer.

During the defendant's siege of the Jeep, Lyles left the Jeep and ran away. Some witnesses recalled that the unarmed victim began walking around a truck when the defendant accosted him, asked him if he wanted "some, too," and without provocation, began stabbing the victim. One witness, who was seated in her vehicle in front of the tavern, testified that the victim did not threaten the defendant and did nothing "other than just stand there and get stabbed." Some witnesses recounted that the episode was initiated by the victim throwing a beer bottle that hit or nearly hit the defendant in the shoulder. One witness testified for the defense that after the victim threw the bottle, he "tackled" the defendant, and they fought. In any event, after a scuffle between the victim and the defendant in the parking lot, the victim was left lying prone and bleeding. He had sustained three significant stab wounds to his chest and abdomen, the lethal wound having penetrated bone before piercing the victim's heart.

Witnesses testified that the defendant wore a knife sheath on his belt. When the police arrived to find the mortally wounded victim in the parking lot, the defendant emerged from the side of the tavern building. The officers frisked him and found no weapons. The defendant had dirt or gravel stains and, apparently, bloodstains on his jeans. The defendant stated, "I think I broke my finger," and added, "I had to defend myself." The defendant appeared to have no impairment in talking or walking and did not seem to be intoxicated. The officers found a knife sheath behind the tavern and found the automatic handgun in a box behind the bar. They found no knife on the premises.

Based upon the foregoing evidence, the jury convicted the defendant of second degree murder, a Class A felony. Second degree murder is defined as the knowing killing of another. Tenn. Code Ann. § 39-13-210(a) (2003).

Familiar rules govern the appellate review of a challenge to the sufficiency of the evidence to support a conviction. The reviewing court must determine whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781 (1979); *State v. Reid,* 91 S.W.3d 247, 276-77 (Tenn. 2002). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). Issues of the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and the appellate court does not re-weigh or re-evaluate the evidence. *Id.* Nor may the appellate court substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *Reid,* 91 S.W.3d at 277. A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of establishing why the evidence is insufficient to support the verdict rendered by the jury. *Id.* Conversely, the state on appeal is entitled to the strongest legitimate view of the trial evidence, as well as all reasonable and legitimate inferences which may be drawn therefrom. *Id.*

Upon our review of the evidence in the case, we readily discern that witnesses gave diverse and sometimes conflicting accounts of the details of the events of the evening. We also discern that most of the witnesses were in some state of intoxication at the time the events unfolded, and several of them were impeached at trial based upon their having been previously convicted of felonies or crimes involving dishonesty. *See* Tenn. R. Evid. 609. Also, some witnesses's testimony conflicted with their prior written statements. *See id.* 613. These factors, however, go to the weight and credibility of the evidence. As mentioned above, this court defers to the jury to determine the weight of the evidence and the credibility of witnesses. We note that at least one eyewitness, who had not been drinking at the time of the homicide, testified affirmatively that the defendant attacked and stabbed the unarmed victim without provocation. The medical pathologist who performed the autopsy on the body of the victim testified that the lethal stab wound that entered the victim's heart was necessarily applied with enough force to penetrate bone. Thus, in our view, the evidence is sufficient to support a finding that the defendant knowingly killed the victim.

In his other issue, the defendant claims that the sentence was excessive. The 25-year sentence was the maximum for a Class A offense in Range I, the sentencing range stipulated by the parties.

In determining whether the trial court has properly sentenced an individual, this court engages in a *de novo* review of the record with a presumption that the trial court's determinations were correct. Tenn. Code Ann. § 40-35-401(d) (2003). In conducting our *de novo* review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. *Id.* §§ 40-35-210(b) (2003), 40-35-103(5) (2003); *State v. Ashby,* 823 S.W.2d 166, 168 (Tenn. 1991). On appeal, the appellant has the burden of showing that the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (2003); *Ashby,* 823 S.W.2d at 169.

In conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102 (2003), 40-35-103 (2003), 40-35-210 (2003); *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

To determine the length of the sentence, the trial court applied three statutory enhancement factors: The defendant had a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the proper range, Tenn. Code Ann. § 40-35-114(2) (2003); the victim was particularly vulnerable, *id.* § 40-35-114(5) (2003); and the defendant employed a deadly weapon during the commission of the offense, *id.* § 40-35-114(10) (2003). The court applied no mitigating factors.

At the outset, we note that the trial court made extensive references to the sentencing principles and guidelines and recorded thorough findings of fact. Accordingly, the sentence is accompanied by the statutory presumption of correctness.

We first consider the application of enhancement factor (2), the defendant's criminal history or behavior. The presentence report revealed the defendant's record of prior convictions: driving while under the influence of an intoxicant (2000), assault and battery (1993, 1990, and 1987), disorderly conduct (1990), leaving the scene of an accident (1990 and 1983), and public intoxication (1999 and 1993). The trial court relied upon the defendant's criminal record to apply enhancement factor (2), and the record supports the trial court's use of and assignment of "considerable weight" to this factor.

Concerning factor (5), that the victim was particularly vulnerable because of age or physical or mental disability, the trial court determined that the victim was particularly vulnerable because of intoxication. The court reviewed the testimony of the pathologist, who testified about the victim's blood-alcohol level, which exceeded .20. The pathologist testified that the victim's ability to defend himself would have been effectively impaired. The court applied the factor because the defendant was not intoxicated at the time of the assault and was able to take advantage of the victim. The evidence supports the trial court's conclusions; we will not disturb the application of factor (5).

The trial court applied factor (10), that the defendant used a deadly weapon in the commission of the homicide, and unquestionably that factor applies. The defendant's use of a knife to kill the victim essentially is not controverted in the evidence. Thus, factor (10) applies.

The trial court declined the defendant's request to apply mitigating factors (2), that the defendant reacted to strong provocation, Tenn. Code Ann. § 40-35-113(2) (2003); (3), that substantial grounds exist to excuse or justify the criminal conduct, *id.* § 40-35-113(3) (2003); and

-4-

(11), that the defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the conduct, *id.* § 40-35-113(11) (2003). We find no fault with the court's conclusions.

Although the defendant and the victim may have engaged in a disagreement in the tavern 30 to 45 minutes before the homicide, and although some evidence indicates that the victim threw a bottle at the defendant, substantial evidence supports the view that the unarmed victim did nothing of substance to provoke the defendant's fatal attack. This evidence justifies the trial court's rejection of factor (2).

Similarly, the record fails to evince a basis for concluding that no substantial grounds exist tending to excuse the criminal conduct. In this regard, the defendant posited that his need to defend himself should mollify his sentence; however, the record contains substantial evidence that the defendant attacked an unarmed, defenseless victim who had done nothing "other than stand there and get stabbed." Thus, the trial court was justified in rejecting mitigating factor (3).

The court was also justified in rejecting the claim, via factor (11), that the crime was committed under such unusual circumstances that it is unlikely that the defendant held a sustained intent to violate the law. The trial judge relied upon the "lull . . . in [the] altercation" following Lyles's escape from the scene on foot as a basis for finding that "there had been a cooling off period . . . , there was a long enough period of time here, I'm finding there was a sustained intent to violate the law that motivated this conduct." Thus, we find no error in rejecting mitigating factor (11).

Based upon the record and our analysis of it, the trial court's sentencing judgment is justified.

Accordingly, the conviction and sentence are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE