**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**OCTOBER SESSION, 1998**

FILED

March 9, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9802-CR-00071** |
| | ) | |
| Appellee, | ) | |
| | ) | **SULLIVAN COUNTY** |
| **V.** | ) | |
| | ) | |
| | ) | **HON. PHYLLIS H. MILLER, JUDGE** |
| **CHRISTOPHER WAYNE CURTIS,** | ) | |
| | ) | |
| Appellant. | ) | **(CHILD ABUSE)** |

FOR THE APPELLANT:                FOR THE APPELLEE:

**TERRY C. FRYE**                         **JOHN KNOX WALKUP**
2001 Euclid Avenue               Attorney General & Reporter
Bristol, Virginia 24201

                                    **ELIZABETH B. MARNEY**
                                    Assistant Attorney General
                                    2nd Floor, Cordell Hull Building
                                    425 Fifth Avenue North
                                    Nashville, TN 37243

                                    **H. GREELEY WELLS, JR.**
                                    District Attorney General

                                    **BARRY P. STAUBUS**
                                    Assistant District Attorney General
                                    140 Blountville Bypass
                                    P.O. Box 526
                                    Blountville, TN 37617

OPINION FILED _____

AFFIRMED AS MODIFIED

THOMAS T. WOODALL, JUDGE

# OPINION

Christopher Wayne Curtis, the Defendant, appeals as of right following his sentencing hearing in the Sullivan County Criminal Court. Defendant pled guilty to one (1) count of child abuse, a Class D felony. Following his sentencing hearing, Defendant was sentenced to two (2) years as a Range I Standard Offender. The Defendant appeals on the basis of the trial court's denial of any form of alternative sentencing. We affirm the judgment of the trial court.

When an accused challenges the length, range or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The presentence report, which was made an exhibit at the sentencing hearing, included a statement given by Defendant to investigating officers six (6) days after the commission of the criminal offense. In that statement, Defendant told the officers that he had been cleaning house all afternoon on the day of the offense and was upset that his wife never cleaned house. While folding clothes in the bedroom, he noticed the twenty (20) month old victim standing on a coffee table which was also located in the bedroom. Defendant took the victim off the table and returned to folding clothes. The victim again climbed on top of the table and was removed by the Defendant for the second time. The victim again climbed on top of the coffee table and was standing up. Defendant stated that he became angry, and he forcefully pulled a pair of jogging pants, upon which the victim was standing, out from under the victim's feet. This caused the victim to fall into a wardrobe beside the coffee table. As a result, the victim fell onto a concrete floor, hitting the back of her head. Defendant told the officers that the victim did not cry very much, and therefore, he thought that she was not injured. When she became sleepy, the Defendant put the victim to bed.

At the sentencing hearing, Defendant's pastor, Reverend Jesse Neil, testified that he had known the Defendant all his life. Reverend Neil testified that Defendant

was active in church activities, singing in a gospel group and visiting nursing homes. He described Defendant as an "excellent, good person."

Christy Hood, engaged to marry the Defendant, testified as to his good relationship with her and her child. Hood stated that she allowed Defendant to care for her child when she was away and did not have any reason to think that he might harm the child. Hood recalled that Defendant was employed by Grindstaff Chevrolet and supported her and her child. She had never seen any indication that he had a problem with anger control.

Earl Curtis, the Defendant's father, is a minister. He testified that the Defendant was raised in a Christian home and that he always went to church. He recalled that Defendant sang in a gospel group at nursing homes as often as possible. Defendant had been employed since he was sixteen (16) years of age. Curtis had never known the Defendant to use drugs or alcohol.

The Defendant testified on his own behalf. He was babysitting the child, his step-daughter, when the offense occurred. He and the child's mother, Angela Vicars, had been married approximately three (3) weeks at the time of the offense. Defendant admitted that "what I done [sic] about pulling, getting the pants, and pulling from under her, it was not --- it was bad judgment on my behalf; but I in no way, meant in any way to cause this to happen, you know. I got the pants, and I did not have one hint of anything in my mind that she was going to fall." Defendant stated that he frequently babysat for his stepdaughter and his other relatives' children. Defendant was living with Angela Vicars and her child prior to their wedding date of November 1, 1998.

-4-

Defendant stated that he was currently employed by Grindstaff Chevrolet and was top salesman for the past two (2) months. Since the age of sixteen (16), Defendant had been constantly employed. He has never been convicted of any criminal offenses and was very involved in his church, singing and visiting the elderly.

Angela Vicars, the mother of the victim, testified that the victim was twenty (20) months old at the time of the offense. Vicars was at work and trusted the Defendant to care for her child as they were married. The child was fine and was sleeping when Vicars left for work. When Vicars returned, the victim was still sleeping and she questioned the Defendant as to whether she had been asleep the entire time Vicars was away. The Defendant told Vicars that the victim had been asleep the entire time she was at work. As the victim looked fine, Vicars and the Defendant went into the other room and watched a movie. Vicars recalled that Defendant was laughing and never mentioned any incident in which the child might have been injured.

At 5:30 a.m. the victim awoke, screaming and unable to open her eyes. When Vicars felt the back of her head, she noticed it was swollen and she called the doctor. The Defendant still maintained that nothing had happened to the victim while he was watching her. After taking the victim to the hospital, they were advised that there would be an investigation. At that time, Defendant stated he was shaving when he heard the victim scream, he walked into her room and found the victim in the floor beside her bed. After talking with the victim's doctor and learning of the victim's injuries to both the front and back of her head, it was determined that the injuries were not a result of a fall from the bed.

The victim was in the hospital for seven (7) days. Due to the amount of brain swelling, the victim was put on steroids and they did not know if she would live. She was in intensive care for a total of three (3) days, with her whole head swollen and unable to open her eyes. Even after beginning to recover, both of the victim's eyes were black. Throughout this time, Defendant continued to deny that anything had happened to the victim while in his care.

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." Tenn. Code Ann. § 40-35-102(5). Thus, a defendant sentenced to eight (8) years or less who is not an offender for whom incarceration is a priority is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(3)-(4). The court should also consider the

potential for rehabilitation or treatment of the defendant in determining the sentence alternative. Tenn. Code Ann. § 40-35-103(5).

The trial court found that although the Defendant was presumed eligible for alternative sentencing, that the Defendant was not a good candidate and his sentence should be served in the Tennessee Department of Correction. In denying an alternative sentence, the trial court ultimately reasoned that Defendant had a lack of potential for rehabilitation and that confinement was necessary to avoid depreciating the seriousness of the offense.

The considerations which militate against alternative sentencing include: the need to protect society by restraining a defendant having a long history of criminal conduct, whether confinement is particularly appropriate to effectively deter others likely to commit a similar offense, the need to avoid depreciating the seriousness of the offense, and the need to order confinement in cases in which less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1).

In reviewing Defendant's presentence report, the trial court found that his statements to the police conflicted with his testimony and his initial denials of wrongdoing to the victim's mother. At the sentencing hearing, Defendant testified that the victim's mother had a bad temper and that the injuries could have occurred prior to her leaving for work. The trial court reasoned that his continued testimony that he "did not mean to do" the acts was an indication that he failed to take responsibility for his actions. Defendant's failure to assume responsibility reflected upon his lack of appreciation of the seriousness of the offense which he committed.

In addition, his lack of honesty demonstrates little potential for rehabilitation. Defendant's credibility and failure to accept responsibility for his crime were both circumstances germane to his rehabilitation potential. State v. Zeolia, 928 S.W.2d 457 (Tenn. Crim. App. 1996) (citations omitted).

The Community Corrections Act allows certain eligible offenders to participate in community-based alternatives to incarceration. Tenn. Code Ann. § 40-36-103. A defendant must first be a suitable candidate for alternative sentencing. If so, a defendant is then eligible for participation in a community corrections program if he also satisfies several minimum eligibility criteria set forth at Tennessee Code Annotated section 40-36-106(a).

However, even though an offender meets the requirements of eligibility, the Act does not provide that the offender is automatically entitled to such relief. State v. Grandberry, 803 S.W.2d 706, 707 (Tenn. Crim. App. 1990); State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the statute provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. Tenn. Code Ann. § 40-36-106(d). The trial court correctly determined that Community Corrections was not an appropriate alternative due to the fact that Defendant committed a violent, felony offense against a twenty (20) month old child. Tenn. Code Ann. § 40-36-106(a)(3).

The burden is on the defendant to show that the sentence he received is improper and that he is entitled to probation. Ashby, 823 S.W.2d at 169. Upon

review of the record, the presentence report, and the briefs in the case <u>sub</u> <u>judice</u>, we find no error in the trial court's denial of alternative sentencing.

In essence, the trial court's findings of fact that Defendant lacked candor and failed to assume responsibility for his criminal acts are sufficient to deny alternative sentencing in this case.

The judgment reflects that Defendant was convicted of the Class D felony of child abuse in violation of Tennessee Code Annotated section 39-15-<u>404</u> (emphasis added). The judgment should have reflected that he was convicted of Class D felony child abuse in violation of Tennessee Code Annotated section 39-15-401. The judgment is modified solely to correct this typographical error.

We affirm the judgment of the trial court as modified.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
GARY R. WADE, Presiding Judge

_____
DAVID H. WELLES, Judge