# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 25, 2001, at Knoxville

## STATE OF TENNESSEE v. JUDY K. CARUSO

### Direct Appeal from the Criminal Court for Lewis County
### No. 5993    Timothy L. Easter, Judge

---

### No. M2000-01265-CCA-R3-CD - Filed May 22, 2001

---

The defendant, Judy K. Caruso, entered pleas of guilt to two counts of aggravated burglary and two counts of theft of property over $1,000. As a part of the plea agreement, the state agreed to dismiss two charges of possession of stolen property and one charge of misdemeanor vandalism. The defendant negotiated concurrent sentences of four years on the burglary convictions and two years on the theft convictions. The trial court denied a request for probation, ordered a 200-day jail sentence to be served day for day, and required the balance of the four-year sentence to be served in a Community Corrections program. In this appeal of right, the defendant claims that she should have been granted an alternative sentence involving immediate release. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

J. Daniel Freemon, Lawrenceburg, Tennessee, for the appellant, Judy K. Caruso.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; Jeffrey L. Long, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On August 26, 1998, Thomas and Kathleen Bartoszek discovered that their second residence, a mobile home located in Hohenwald, had been burglarized. There was evidence of forced entry through a rear window. The items removed from the residence had a value of $2,125.88. A week later, Jimmy and Patricia Kelley discovered that their residence in Hohenwald had been burglarized as well. Among the items stolen were a doll collection, jewelry, and a vacuum cleaner.

On October 11, 1998, Ms. Bartoszek reported to the Lewis County Sheriff's Office that some of the items stolen from her home were for sale at a local flea market. Lieutenant Lee Staggs, who was assigned to investigate, learned that the defendant's husband had sold the stolen items to the flea

market. A search of the Caruso residence led to the discovery of more stolen items. The defendant initially denied any knowledge of the burglaries and claimed that she had purchased the items from another individual. When officers identified some of the personal property in the defendant's residence as items taken during the Kelley burglary, however, the defendant admitted her involvement in each of the burglaries. She then led officers to other stolen items, which she had concealed at her home and surrounding property.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are, of course, presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court if the sentence imposed is eight years or less. Tenn. Code Ann. § 40-35-303(b).

Among the factors applicable to probation consideration are the circumstances of the offense, the defendant's criminal record, social history and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285 (Tenn.1978). The nature and circumstances of the offense may often be so egregious as to preclude the grant of probation. See State v. Poe, 614 S.W.2d 403 (Tenn. Crim. App. 1981). A lack of candor may also militate against a grant of probation. State v. Bunch, 646 S.W.2d 158 (Tenn. 1983).

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may both benefit the defendant and serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). Even in cases where the defendant meets the

minimum requirements of the Community Corrections Act of 1985, the defendant is not necessarily entitled to be sentenced under the Act as a matter of law or right.  State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987).  The following offenders are eligible for Community Corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of nonviolent felony offenses;
>
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (6) Persons who do not demonstrate a pattern of committing violent offenses; and
>
> Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

> However, subpart (c) creates a "special needs" category of eligibility:
>
> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or <u>mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution</u>, may be considered eligible for punishment in the community under the provisions of this chapter.

Tenn. Code Ann. § 40-36-106(c) (emphasis added).  To be eligible for Community Corrections under subpart (c), the defendant must first be eligible for probation under Tenn. Code Ann. § 40-35-303.  State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989).

In Ashby, our supreme court encouraged the grant of considerable discretionary authority to our trial courts in sentencing matters.  823 S.W.2d at 171; see State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).  "[E]ach case must be bottomed upon its own facts."  Taylor, 744 S.W.2d at 922.  "It is not the policy or purpose of this court to place trial judges in a judicial straight-jacket in this or

any other area, and [appellate courts] are always reluctant to interfere with their traditional discretionary powers." Ashby, 823 S.W.2d at 171.

The defendant is 44 years old, married and has three children, two of whom have reached majority and live independently, and one of whom is 17 years of age. She has a high school education but minimal work experience and, apparently, was unemployed at the time of this offense. She attributed her involvement in the crimes to severe depression, medication, and alcohol abuse. The record indicates that the defendant had two prior theft-related convictions in Indiana, apparently in 1989 and 1992. The defendant is disabled, having been diagnosed with degenerative disk disease, and receives monthly disability benefits in the sum of $515.00.

At the conclusion of the sentencing hearing, the trial court carefully considered each of the principles and considerations involved and determined that the defendant was a favorable candidate for alternative sentencing due in great measure to the age of the defendant's prior misdemeanor offenses. It concluded, however, that some confinement was necessary in order to avoid depreciating the seriousness of the offense. In addition to the 200-day jail sentence, the defendant was required to participate in any after-care program recommended by mental health professionals, participate in a weekly Alcoholics Anonymous program, and make restitution in the amount of the insurance deductible.

Because the trial court found no basis to deny probation based upon deterrence and also determined that "the only measures [less restrictive than confinement] that have ever been applied to this defendant are fairly old, and there is no proof that she was unsuccessful with those measures . . . other than she continues to break into people's homes some years later," the defendant argues that probation should have been granted without any period of incarceration. We disagree.

The record establishes that the defendant removed practically every item of value from the Bartoszek and Kelley residences. She was so thorough that she even dug the flowers from the yard of one of the residences. When initially questioned by law enforcement authorities about the Bartoszek burglary, she was untruthful. She had hidden some of the stolen items inside the walls of her residence. Other items were hidden outside on her property. She acknowledged her culpability only when confronted with additional stolen items she could not otherwise explain. It was established at the sentencing hearing that officers also found a purse and five or six credit cards belonging to Lanota Wilson outside the defendant's residence. Upon further investigation, it was determined that the defendant had twice burglarized a residence in another county in the presence of an elderly, wheelchair-bound woman. When the woman took her photograph in the second burglary, the defendant confiscated the camera.

In our view, the repeated nature of the criminal conduct of the defendant, her lack of candor in the initial stages of the investigation, and the extensiveness of the thefts at each of the two residences, warranted a term of split confinement: a determinant jail sentence of 200 days followed by an alternative sentence involving release into the community in a treatment program for alcohol and drug abuse. That the defendant had been convicted of similar crimes several years before

suggests some resistance towards rehabilitation. In this instance, the trial court carefully considered the sentencing principles, the applicable law, and the relevant facts and circumstances. In our view, the sentence imposed was well within the discretionary authority traditionally granted trial courts in matters of sentencing.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE