IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 7, 2005

**STATE OF TENNESSEE v. CLAUD SIMONTON**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-01528    James C. Beasley, Jr., Judge**

---

**No. W2004-02406-CCA-R3-CD  - Filed October 3, 2005**

---

Defendant, Claud Simonton, pled guilty to one count of vehicular homicide by intoxication, a Class B felony, and one count of simple possession of cocaine, a Class A misdemeanor. Pursuant to a plea agreement, Defendant agreed to a minimum sentence of eight years as a Range I, standard offender, for his vehicular homicide conviction, and an eleven month, twenty-nine day sentence for his possession conviction, without an agreement as to the manner of service of the sentences. The trial court ordered Defendant to serve his sentences concurrently for an effective sentence of eight years. Following a sentencing hearing, the trial court ordered Defendant to serve his eight-year sentence in confinement. In this appeal, Defendant argues that the trial court erred in not granting Defendant's request for alternative sentencing. Following a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

Robert Wilson Jones, District Public Defender; Garland Erguden, Assistant Public Defender; and Diane Thackery, Assistant Public Defender, Memphis, Tennessee, for the appellant, Claud Simonton.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

In January 2002, Defendant was returning to his home in Covington from Tunica, Mississippi, when he drove his motor vehicle off the road and hit a tree in Memphis. Mary Simonton, Defendant's mother, was a passenger in the vehicle, and she later died of the injuries she sustained in the accident. Defendant's blood alcohol level was 0.17, and he had 1.1 grams of cocaine

in his possession at the time of the accident. Defendant's blood analysis also was positive for cocaine.

At the sentencing hearing, Cathy Oliver said that she and Defendant attended the same high school and had remained acquaintances over the years. She and Defendant began dating about nine months before the sentencing hearing. Ms. Oliver said that Defendant had not driven an automobile while they were dating. Ms. Oliver said that either she or one of Defendant's sons drove Defendant where he needed to go. She was aware that Defendant had a prior history of alcohol and drug problems. Ms. Oliver said that Defendant was currently serving a nine-month sentence in Tipton County for an unrelated DUI conviction.

Jim Whitley, the minister of the Liberty Baptist Church in Fayette County, became friends with Defendant after Defendant made a "profession of faith" in 1986. Reverend Whitley said that after the accident Defendant gave "testimony as to his failure" before the congregation. Reverend Whitley said that Defendant told the congregation "[t]hat he had gotten his eyes off the Lord and had fallen back into some past patterns and told of the wreck and the death of his mother and took full responsibility, very remorseful as he spoke to the church." Reverend Whitley, however, could not specifically recollect if Defendant told the congregation that he was under the influence of alcohol and drugs when the accident occurred.

Peter Simonton, Defendant's brother, said that Defendant was well respected in the community and a good father to his two sons. Mr. Simonton said that Defendant checked on his mother every day, either in person or by telephone, while she was alive. Mr. Simonton said that Ms. Simonton particularly enjoyed going to the casinos in Tunica so that she could play the slot machines. Mr. Simonton said that either he or Defendant would take their mother to Tunica each month.

Mr. Simonton said that he was aware that Defendant had six prior DUI convictions. He said, however, that Defendant had not driven an automobile since the accident. Mr. Simonton said that Defendant's assets had also been placed in a trust which paid for Defendant's basic needs and the upkeep of his house. Mr. Simonton said that he approached Defendant about establishing a trust approximately six months after the accident, and Defendant agreed to the plan. Mr. Simonton said that Defendant was very remorseful about the accident, and it was his belief that the seriousness of the accident had changed Defendant's life.

Mary Hunt Cook, Defendant's sister, said that Defendant was a good father, and it would be detrimental to his sons if Defendant was not granted probation. She said Defendant was "a strong figure," and that people "could follow him down a good path."

Defendant testified that he was convicted three times of DUI in the 1980's, and then he stopped drinking for eleven years. In the 1990's, his marriage began to fail, and he incurred three more DUI convictions. The last DUI conviction was for an offense which occurred on November 15, 2001, two months before the accident that led to the current charges. Defendant said that he was

currently incarcerated as a result of this DUI conviction. Defendant said that he went on disability in 2000 because of chronic obstructive pulmonary disease. He said that he used crack cocaine "once or twice every couple of weeks" despite his respiratory problems. Defendant said that he and his mother went to Tunica every two weeks or "sometimes every week." Defendant said his mother had experienced problems with alcoholism and depression in the past, but she had overcome those problems through "self-determination."

Defendant said that he thought about his mother every day. He said that it was not "a case of me being an alcoholic or a drunk day in and day out." Defendant said that he just "made some bad decisions." Defendant denied that he was addicted to either alcohol or drugs. Defendant said that none of his DUI convictions required him to attend alcohol rehabilitation programs as part of his sentence, although he had attended a few AA meetings in 1997 or 1998. Defendant said that he no longer used alcohol or drugs and did not drive.

Defendant said that he bought crack cocaine shortly before the accident occurred. He told his mother he "had to pay a man some money." Defendant said that he did not use the cocaine before the accident, and that he had not used cocaine for some weeks before the accident.

Robert Simonton, Defendant's brother, testified on behalf of the State. He said that all of his family, with the exception of his sister, were alcoholics at some point in time. Mr. Simonton said his attempts to distance himself from the family's drinking habits had caused conflict within the family. Mr. Simonton said that he did not believe that Defendant would change, and that Defendant would "be back up in front of the judicial system no matter what."

At the conclusion of the sentencing hearing, the trial court found that Defendant was not a proper candidate for any form of probation. The trial court found that although Defendant had been previously extended probation and served minimal time in confinement for his prior DUI convictions, he had demonstrated little potential for rehabilitation over the years. The trial court noted also that the alcohol problems existing in Defendant's family would not be a positive factor if Defendant were placed back into the community on a probated sentence. The trial court specifically declined to accredit Defendant's testimony that he had not used cocaine for weeks before the accident.

The trial court also denied Defendant's request for probation based on its finding that a sentence of confinement was "necessary to avoid depreciating the seriousness of the offense" and "particularly suited to provide an effective deterrence to others likely to commit similar offenses." *See* Tenn. Code Ann. § 40-35-103(1)(B). The trial court observed that a "fair percentage of the fifty cases [the trial court hears] every day are DUI's." The trial court stated,

> But what's disturbing to me is in the community of Covington, here's a man that is involved with the youth, is involved with the church, is involved with the community, and people obviously . . . look up to [Defendant]. He's a figure in the community. And so to say that what happens to him won't be a deterrent to others,

I don't agree. I believe that [Defendant's] testimony would be many, many times magnified. If he stands up in front of a church group or a youth group or a baseball team or a football team, and he said, if you drink and drive or if you smoke crack cocaine and you drive and you kill somebody, you go to jail.

Based on the circumstances surrounding the offense, Defendant's prior criminal history, his lack of amenability to rehabilitation and the sentencing principles, the trial court ordered Defendant to serve his eight-year sentence in confinement.

In his appeal, Defendant argues that the trial court erred in not granting him full probation or a sentence of split confinement. Defendant argues that his sobriety since the accident and his abstinence from alcohol and drugs in the 1990's demonstrates that there is a good potential for rehabilitation. Alternatively, Defendant contends that the trial court erred in not granting a sentence of split confinement with drug and alcohol treatment as a condition of probation.

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. *Id.* § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Defendant is not presumed to be a favorable candidate for alternative sentencing options because he was convicted of a Class B felony. *See* Tenn. Code Ann. § 40-35-102(6). Nonetheless, because Defendant's sentence is eight years, he is eligible for consideration for alternative sentencing options. *See id.* §§ 40-35-112(a)(2); 40-35-303(a).

When determining if incarceration is appropriate, a trial court should consider whether (1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct; (2) confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses; or (3) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to defendant. Tenn. Code Ann. § 40-35-103(1)(A)-(C). The trial court may

also consider a defendant's potential or lack of potential for rehabilitation and the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. *Id.* §§ 40-35-103(5), -210(b)(5); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). The sentence imposed should be the least severe measure necessary to achieve the purpose for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(4).

"[S]entencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of the defendant." *State v. Ring*, 56 S.W.3d 577, 586 (Tenn. Crim. App. 2001). Defendant bears the burden of establishing his suitability for total probation, and "that probation will be in the best interest of the defendant and the public." *Id.* at 586 (citing *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

The trial court found that a sentence of confinement was appropriate based on the seriousness of the offense and the potential deterrent effect on others in the community as well as Defendant. In addition, the trial court found that Defendant had been extended alternative sentencing numerous times in the past without preventing Defendant from drinking and driving. The trial court also considered Defendant's lack of candor when he denied using cocaine at the time of the accident despite the presence of cocaine in his blood. A defendant's lack of candor may mitigate against a grant of probation. *State v. Bunch*, 646 S.W.2d 158 (Tenn. 1983).

The State argues that the trial court properly found that a sentence of confinement was necessary on deterrence grounds under *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). When deterrence considerations are the sole basis for imposing a sentence of confinement, the Supreme Court in *Hooper* held that

> we will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

*Id.*, at 10.

The Supreme Court suggested five non-exclusive factors that reveal "whether a need for deterrence is present and whether incarceration is 'particularly suited' to achieve that goal:"

> 1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole.
> . . .
> 2) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior.

. . .

3) Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case.

. . .

4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective.

. . .

5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct results in previous arrests or convictions.

*Id*, at 10-12. The supreme court also recognized that "general deterrence is possible only after specific deterrence has first been achieved." *Id*, at 12. Thus, "repeated occurrences of the same type of criminal conduct by a defendant generally warrant a more emphatic reminder that criminal actions carry consequences." *Id.*

In the case *sub judice*, the trial court relied in part upon its personal knowledge of its daily docket in finding that driving while intoxicated was a significant problem in the community. In general, the trial court may not consider factors other than those presented in court. *See* Tenn. Code Ann. § 40-35-210(g); *Hooper*, 29 S.W.3d at 12. In *State v. Nunley*, 22 S.W.3d 282, 288 (Tenn. Crim. App. 1999), this Court noted that "a court may not consider facts outside the record that are within the judge's personal knowledge under the guise of taking judicial notice." Personal observations based on the content of the trial court's daily docket "cannot serve as a substitute for factual findings containing comparisons to indicate increased drug use in [the county] that would require a need for deterrence." *State v. Fields*, 40 S.W.3d 435, 442 (Tenn. 2001).

Some evidence was presented that the case had generated a certain amount of publicity within Covington. Reverend Whitley testified that Defendant publicly acknowledged his offense in front of his church congregation. Ms. Cook and Peter Simonton said that Defendant was well-known in the community and was well-respected, and Ms. Cook said that many people had spoken to her about the offense. The State did not present any proof that the individuals in Defendant's community who were aware of the offense were "individuals likely to commit similar crimes." *Hooper*, 29 S.W.3d at 11. Be that as it may, we need not reach the question of whether the community's awareness of Defendant's offense was "beyond that normally expected in the typical case." *Id*.

Although Defendant argues that he no longer drives or drinks alcohol, he was serving a nine-month sentence at the time of the sentencing hearing for a DUI offense that occurred only two months before the offense supporting the current charges. Defendant has six prior DUI convictions beginning in 1980. Other than his 2001 DUI conviction, his DUI sentences were either entirely suspended or suspended after service of a minimal period of confinement. Defendant's repeated commission of similar offenses despite his numerous arrests and convictions support a finding that a sentence of confinement is necessary based on a need of specific deterrence even under the *Hooper* analysis. *See id*. at 12.

Unlike the situation presented in *Hooper*, however, deterrence was not the only basis supporting the trial court's finding that confinement was appropriate. Defendant has been committing DUI offenses for approximately twenty years. Defendant has been extended repeated sentences involving no or minimal periods of confinement which have failed to deter Defendant from driving while intoxicated. *See* Tenn. Code Ann. § 40-35-103(1)(A) and (C). Based on the foregoing, we conclude that Defendant has failed to meet his burden of demonstrating that probation "will subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 SW.2d 250, 259 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

Defendant also argues that he should have been granted a sentence of split confinement with a requirement that he attend a drug and alcohol rehabilitation program as a condition of probation. Defendant argues that he no longer drives, and he has shown in the past that he can refrain from drinking for an extended period of time. Defendant was fifty-four years old at the time of the sentencing hearing. Defendant said in his pre-sentence report that he began drinking alcohol at the age of sixteen, and he started using marijuana at the age of twenty. Although he stopped using marijuana when he was thirty-five, Defendant said that he started using cocaine at forty-eight. Despite his numerous DUI convictions and lengthy history of alcohol and drugs, Defendant denies that he has a problem with alcohol or drugs. Defendant has only voluntarily participated minimally in an alcohol rehabilitative program in the past. All of these factors reflect negatively on Defendant's potential for rehabilitation.

The record supports the manner of service of the sentence imposed. Defendant failed to carry his burden to show that he was a suitable candidate for alternative sentencing, and the trial court thus did not err by imposing a sentence of confinement.

## CONCLUSION

After a thorough review of the record, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE